(Decided 15th January, 1874.)

---

WILLIAM W. BLACK *vs.* J. FRANK WOODROW and LAKE RICHARDSON.

*Pleading—Practice—Bill of particulars—Contract: when obligation is implied—Measure of damages— When Unstamped instrument may be admitted in Evidence—Evidence of deceased witness—Appeal.*

As a general rule, a bill of particulars, unless restricted to some particular count, applies to all the counts of a declaration, if they be of a character to require such aid in order to notify the defendant of the nature and extent of the plaintiff's claim.

Where a count furnishes sufficient notice of the nature of the plaintiff's claim and of the evidence required to support it, a bill of particulars is not demandable.

Where a contract, on its face, appears to be obligatory upon one party only, but it is manifest that it was the intention of the parties and the considera-

tion upon which the one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such obligation will be implied.

In an action for damages, the plaintiffs alleged in the fifth count of their declaration—the first four counts having been stricken out by consent—that they had agreed with the defendant to build him a house for which he agreed to pay them a certain price; that, in pursuance of said agreement, they began to build the house and were ready and willing to complete it, but that the defendant prohibited and forcibly prevented them from so doing, and compelled them to desist from the work. The sixth count set forth the contract and the work done under it by the plaintiffs in detail, and alleged that the plaintiffs were then and there ready, willing, and anxious to comply with the contract in every particular, but were prevented from so doing by the defendant. Verdict being for the plaintiffs; upon appeal from an order overruling a motion in arrest of judgment, HELD:

1st. That from this contract an obligation by the defendant to suffer the house to be built was implied.

2nd. That though the defendant had the right to stop work on the building, yet, by so doing, he committed a breach of contract and incurred a liability to pay the damages that might result therefrom.

3rd. That the damages in such case would include compensation for the labor done and materials furnished, and such further sum, as might, by legal principles, be assessed for the breach of the contract.

4th. That though the declaration omitted in terms to aver the implied promise of the defendant and was not very technical in stating the breach thereof, yet the fact of prevention was alleged as the breach, and this was sufficient; especially after verdict, which is aided by intendment.

Where a party sues on an instrument which is required by the Act of Congress of 13th of July, 1866, to be stamped, upon penalty that such instrument "shall be deemed invalid and of no effect," when the stamp is omitted, "with intent to evade the provisions" of the Act; and there is no evidence that the plaintiff, in omitting the stamp, intended fraudulently to evade those provisions, the instrument may be used in evidence.

Where the defendant in a suit, testifying to what a deceased witness has proved on a former trial of the same cause, stated that he could give *substantially* the testimony of the deceased witness as to a certain point, but could not give all his testimony as to a certain other point. HELD:

That this evidence could not be admitted.

---

---

Evidence given by a deceased witness on a former trial between the same parties where the question in issue was the same, and the right of cross-examination could have been freely exercised by the adverse litigant, may be proved by any person having competent knowledge: but such witness must be able and profess to state *all the facts* testified to by the deceased witness.

An appeal will not lie from the action of the Court in refusing to grant a prayer of an appellant, or in granting it with a modification, where the particular point involved is embodied in a prayer of the appellee which had been granted, and to which the appellant did not except.

APPEAL from the Superior Court of Baltimore City.

The facts are stated in the opinion of the Court.

*First Exception.*—At the trial of the cause, the defendant, in pursuance of notice from the plaintiffs, produced the original contract, made in May, 1869, for the building by the plaintiffs of a frame dwelling-house for the defendant. This contract, it is not important to set out here. When produced, it had affixed to it a five cent U. S. Internal Revenue stamp. The defendant objected to the admissibility of the contract, on the ground that it had not been stamped according to requirements of Acts of Congress; offering to prove, unless plaintiffs admitted it, that the contract had been stamped by the plaintiffs without the knowledge or consent of the defendant, about the 11th of December, 1871, more than a year subsequent to its execution, and when it had been produced, upon notice from the plaintiffs by the defendant, it was unstamped, but was then stamped by the plaintiffs, for the purpose of being used in a suit by said plaintiffs against said defendant for an alleged violation of said contract. The plaintiffs admitted that they had stamped it about the 11th of December, 1871, without the knowledge or consent of the defendant, but stated, as part of the admission, that a short time after the contract had been signed, it had been given to the defendant. At

Black *vs.* Woodrow and Richardson.

the time the contract was signed, they had no stamp and could not conveniently get one. The contract was delivered a short time afterwards, unstamped, by Woodrow to the defendant; and after the contract had been so delivered, the plaintiffs bought a 5 ct. U. S. stamp, and gave it to the defendant to put upon said contract. The contract remained from the time when it had been delivered to Black, in his possession, until its production in the Circuit Court for Cecil County, and it never had been stamped until stamped by the plaintiffs as aforesaid, in December, 1871, though the plaintiffs had no knowledge that their directions to stamp it had not been complied with.

These being the facts admitted, the Court overruled the objection for want of stamp, and allowed the contract to be read in evidence to the jury; to which ruling of the Court the defendant excepted.

*Second Exception.*—The defendant, to support the issue on his side, asked William W. Black, the defendant, who was called as a witness in his behalf:

1st. Were you present at a trial between the present plaintiffs and defendant in the Circuit Court for Cecil County, in December, 1871, upon this same cause of action?

*Answer.* I was.

2nd. Was a certain J. J. Heckart produced on the part of the defendant in that cause, and examined as a witness?

*Answer.* He was.

3rd. Is he living or dead?

*Answer.* He is dead.

The witness then stated that he was present at the former trial during the whole of the examination of Col. Heckart, and thinks he heard it all; can state substantially what he said as to the quality and condition of the lumber proposed to be used in the building, which was then on the wharf at Principio, but cannot state what he

said substantially as to the different qualities of pine as grown in the different States of North Carolina and Georgia, as to which Col. Heckart gave evidence. The defendant then offered to examine said witness to prove what had been Col. Heckart's testimony about the condition of the lumber at Principio wharf.

The plaintiffs objected, because the witness offered could not recollect substantially the whole of Col. Heckart's testimony. The Court sustained the objection, and the defendant excepted.

*Third Exception.*—The plaintiffs offered evidence tending to maintain the issues on their part, and the defendant offered evidence tending to maintain the issues on his part. And there was evidence tending to prove all the facts hypothetically stated in the plaintiffs' third prayer.

The evidence being closed on both sides, the plaintiffs offered the following prayers, which were granted :

1. That if the jury believe from the evidence that the contract offered in evidence by the plaintiffs was signed by the plaintiffs and defendant, and that the plaintiffs were ready and willing on their part to fulfil said contract, and that the defendant refused to allow them to do so, or refused to allow plaintiffs to haul to the site of the building mentioned in said contract materials suitable for its erection ; and further find that the plaintiffs have sustained damage thereby, then the plaintiffs are entitled to recover in this action for the actual loss and damage sustained by them in consequence of said refusal, less the amount of defendant's account in bar ; provided said account in bar, as found by the jury, does not equal or exceed the amount of damages sustained by the plaintiffs.

2. That if the jury find the facts stated in the plaintiffs' first prayer, and that the plaintiffs expended their labor, time or money in endeavoring honestly and in

good faith to carry out said contract, either for labor or materials suitable for the building referred to in the contract, or purchased or agreed to purchase materials suitable and proper for said building, and were obliged to sell them in consequence of the refusal of the defendant to allow them to fulfil said contract, and did resell them for the best price that could be reasonably obtained therefor, and at a less price than what they had agreed to pay for the same, that all these matters are proper for the consideration of the jury in estimating the damages of the plaintiffs, and they should make a reasonable allowance therefor.

3. That if the jury believe from the evidence that the term "North Carolina yellow pine flooring" is used in the lumber trade to designate certain kind of hard yellow pine flooring, and it is not confined exclusively to the growth of the State of North Carolina, but also includes the same general character of flooring grown in the adjacent States of South Carolina and Georgia, then the plaintiffs had a right, under the contract offered in evidence by them, (if the jury find that said contract was signed by the plaintiffs and defendant,) to use in defendant's house yellow pine flooring grown in the State of Georgia, if first-class yellow pine flooring, and of the same general character, and equal or superior in quality to first-class yellow pine flooring grown in the State of North Carolina.

4. If the jury believe from the evidence that the contract referred to in the evidence was signed by plaintiffs and defendant, and the plaintiffs were ready and willing and offered on their part to perform the same, and that they made a sub-contract with a certain Amos Treadway to dig the cellar and build the cellar walls in accordance with said contract, and that said Treadway commenced said work and partly performed the same, even if not in exact accordance with said contract, and that said

work so done had not been finished or accepted by the plaintiffs, that then these facts do not authorize the defendant to rescind the said contract; provided the jury find the plaintiffs could have altered or reconstructed said cellar walls, and finished the building within the time mentioned in said contract, and in accordance therewith, and did not refuse to do so.

And the defendant offered the following prayers :

1. It being admitted that the written contract upon which suit is brought in this case, and which contract has been read in evidence to the jury, notwithstanding the objection of the defendant—was unstamped with a United States Internal Revenue Stamp at the time the contract was made, and so remained unstamped up to the 11th day of December, A. D., 1871, when suit was brought upon it in the Circuit Court for Cecil County, against the present defendant by the present plaintiffs, and was at the said trial then and there stamped by the plaintiffs, without the consent of the defendant, the jury have no right to consider such contract or give any damages for the alleged violation of it.

2. It being admitted that the contract sued on in this case, and which is in writing, was made in June, 1869, and was not stamped in accordance with the Act of Congress upon that subject, but was only stamped long afterwards, to wit, on the 11th day of December, 1871, for the purpose of being used in a suit which had been brought upon it by plaintiffs, and was then stamped without the consent of the defendant, the said contract is utterly null and void.

3. If the jury believe the plaintiffs made with the defendant a contract to build for him a house upon his farm in accordance with the terms and stipulations of a written agreement offered in evidence, that then, before they can find a verdict in favor of the plaintiffs for a violation of said contract by the defendant, they must first

be satisfied from the evidence in the cause that the plaintiffs were ready and willing, and offered to make the lower floors of said house, including porches, of first-class North Carolina yellow pine.

4. If the jury believe that plaintiffs and defendant made a contract for the building by plaintiffs of a house for defendant, and that said house has not been built, nor the contract abandoned by the mutual consent of both parties, nor the plaintiffs prevented from building the house according to the terms and specifications agreed on between them, that then the plaintiffs can recover nothing upon any of the counts of the declaration filed in this cause, and the verdict must be for the defendant.

5. If the jury find that defendant employed plaintiffs to build for him a first-class house upon his farm in Cecil County in a workmanlike manner, and according to specifications agreed upon between them; and shall further find that plaintiffs proceeded to build a house upon defendant's said farm, but of an inferior class, and in a manner variant from said specifications and contract, and in an unworkmanlike manner, that then defendant had the right to stop the progress upon his farm of such altered work, so variant from the specifications and contracts.

6. If the jury believe that plaintiffs agreed with defendant to build for him a house upon his farm, in the manner and according to the terms and stipulations contained in the written contract offered in evidence, then, before they can find a verdict in plaintiffs' favor, for a violation of said contract, they must be first satisfied, either that the house has been built, or that the plaintiffs were ready and willing to build it, in accordance with the terms and stipulations contained in said contract, but were prevented by the defendant.

7. If the jury should be of opinion that the plaintiffs are entitled to recover under any of the preceding prayers for a violation of the contract by defendant, then the

plaintiffs are entitled to recover in this action whatever sum of money they may find that the plaintiffs have been damnified by the default of the defendant and his failure to fulfil his part of the contract, and for nothing more; and in considering the question of damage, the jury should allow the plaintiffs as much as the performance of the contract, in accordance with its terms and stipulations, would have benefitted them and nothing more.

The Court (DOBBIN, J.,) refused to grant the defendant's first and second prayers, and refused the third as offered, but granted it with a modification, as follows:

If the jury believe the plaintiffs made with the defendant a contract to build for him a house upon his farm, in accordance with the terms and stipulations of a written agreement, offered in evidence, that then, before they can find a verdict in favor of the plaintiffs for a violation of said contract by the defendant, they must first be satisfied from the evidence in the cause that the plaintiffs were ready and willing, and offered to fulfil their part of the said contract in all particulars.

The Court granted the fourth and sixth prayers of the defendant; his fifth prayer was conceded by the plaintiffs, and his seventh prayer was granted in connection with the plaintiffs' second.

The defendant excepted to the refusal by the Court to grant his first and second prayers, and to its refusal to grant his third prayer as offered, and to the granting of the same with the modification. The verdict and judgment were for the plaintiffs, and the defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*Albert Constable*, for the appellant.

The declaration having been amended by striking out the common counts, this action is upon an open, unre-

scinded contract, and the sufficiency of the declaration must be tested by the principles applicable to that form of action. The contract is treated by the plaintiffs as open, and they "can only recover damages, and must state the special contract and the breach of it." *Towers vs. Barrett*, 1 *Term Rep.*, 136; *Goodman vs. Pocock*, 15 *A. & E.*, (69 *E. C. L.*, 574.)

The ground of recovery in *special assumpsit* can only be the breach of the special promise. Nothing else will support it. Will the prevention of plaintiffs' performance by the defendant amount to a breach? If it will not, then, clearly there is no breach alleged in either of these counts, and the judgment must be arrested. *Aspdin vs. Austin,* and *Dunn vs. Sayles*, 5 *Adol. and Ellis, N. S* , (48 *E. C. L. R.,* 670, and 684;) *Laird vs. Pim*, 7 *Mees. & Wel.*, 474.

Even if the defendant had not the right to prevent the actual building of the house, still the averment as here, of the prevention merely, without anything to show a renunciation or discharge of the contract by the defendant, is not sufficient. *Phillpotts vs. Evans*, 5 *Mees. & Wel.*, 475; *Ripley vs. M'Clure*, 4 *Exch.*, 345; *Hochster vs. De la Tour*, 2 *E. & B.*, (75 *E. C. L.*, 678 ;) *Reid vs. Hoskins*, 5 *E. & B.*, (85 *E. C. L.*, 727;) *Avery vs. Bowden*, 5 *E. & B.*, (85 *E. C. L.*, 714;) *Barrick vs. Buba*, 2 *Common Bench, N. S.*, (89 *E. C. L.*, 563 ;) *Dugan vs. Anderson*, 36 *Md.*, 583.

The principle of *Elderton vs. Emmens,* 6 *C. B.*, (60 *E. C. L. R.*, 158,) can only apply, and was so intended by the Court, to cases of servants hired for a specific period and dismissed before the expiration of the period. A lawyer retained for a year, and dismissed within the year, is the case mentioned by the Court. These are properly said to be in the "employ" or "retainer" of the hirer. They are cases where the contract creates a *relation* as distinct from the work contracted for—as in the cases of

master and servant, client and attorney, employer and employé.

The next question will be whether this defect is cured by the verdict. *Dunn vs. Sayles*, 48 *E. C. L.*, 680, was decided on a motion in arrest; and *Elderton vs. Emmens*, 60 *E. C. L.*, also was on a motion in arrest. In neither of these cases was it intimated that the defect was cured by the verdict. *Rushton vs. Aspinall, Douglas*, 679; *Hayter vs. Moat*, 2 *Mees. & Wel.*, 56; *Spieres vs. Parker*, 1 *Term*, 145.

The verdict is largely in excess of the amount claimed under the bill of particulars filed in the cause.

The effect of a bill of particulars is to explain and to *limit* the claim made by the declaration. 1 *Taylor on Evidence, sec.* 758; *Burkitt vs. Blanshard*, 3 *Ex. Rep.*, 92; *Scott vs. Leary*, 34 *Md.*, 389.

The first exception is to the admissibility in evidence of the contract under the Act of Congress. If the Act of Congress is constitutional, then there is an end of the question, as no ingenuity can take this contract out of the express words of the Act. If this Court should reverse upon this question, there will not be a *procedendo*, because there can be no recovery upon that contract. 2 *Taylor on Ev., sec.* 1035; 1 *Phill. Ev.*, 586; 2 *Phill. Ev.*, 672, *note* 3; 3 *Phill. Ev.*, 292, *note; Bladen vs. Wells*, 30 *Md.*, 577; *McClernan vs. Hall & Loney*, 33 *Md.*, 296; *Reed vs. Deese*, 14 *Eng. Com. Law*, 41. As to the second exception, Black was a competent witness, and ought not to have been rejected. *Burgess vs. The State*, 12 *G. & J.*, 68; *Wolf vs. Hauver*, 1 *Gill*, 92; *Grahame & Parran vs. Harris, Parran & Co.*, 5 *G. & J.*, 489; *Tyson vs. Shueey*, 5 *Md.*, 541; *Williams vs. Wilcox*, 8 *A. & E.*, 314, (35 *E. C. L.*, 396;) *Ferrand vs. Milligan*, 7 *A. & E.*, (53 *E. C. L.*, 728;) 1 *Phil. on Ev., C. & H.*, 393; *Williams vs. Williams*, 4 *Maule & Selw.*, 497; *Ogle vs. Paleski, Holt's N. P. Cas.*, 485; 1 *Taylor on Ev., secs.* 436, 438, 507, 508.

The appellees object that the issue was not the same. If the Court think the objection can be raised for the first time in this Court, we reply, that it is only necessary that the *cause of action* be the same. *Long vs. Davis*, 18 *Alabama, N. S.*, 801; *Clealand vs. Huei*, 18 *Id.*, 343; *Crawford vs. Word*, 7 *Geo.*, 445; *Wright vs. Doe, dem. Tatham*, 1 *A. & E.*, 3; *Wolf vs. Wyeth*, 11 *Serg. & Rawle*, 150; *Kendrick vs. State*, 10 *Humphreys*, 491; *Waters, et al. vs. Waters*, 35 *Md.*, 538; *Bowie vs. O'Neale*, 5 *H. & J.*, 226; *Garrott vs. Johnson*, 11 *G. & J.*, 173; 1 *Greenleaf Evidence*, secs. 165, 166.

*Arthur W. Machen* and *John H. Price*, for the appellees.

The first exception was to the admissibility of the written contract, because not stamped before 11th December, 1871, although executed more than a year before. The Act of Congress does not apply to evidence in State Courts. *Green vs. Holway*, 101 *Mass.*, 243; *Carpenter vs. Snelling*, 97 *Mass.*, 452, decided 1867; *Latham vs. Smith*, 45 *Ills.*, 29; *Griffin vs. Ranney*, 35 *Conn.*, 239; *Craig vs. Dimock*, 47 *Ill.*, 308; *Bunker vs. Green*, 48 *Ill.*, 243; *Weltner vs. Riggs*, 3 *W. Va.*, 445; *Hunter vs. Cobb*, 1 *Bush. Ky.*, 239; *Duffy vs. Hobson*, 40 *Calif.*, 240; *Jones vs. Keep*, 19 *Wisc.*, 369; *Hale vs. Wilkinson*, 21 *Grattan*, 75; *People vs. Gates*, 43 *N. Y.*, 40; *Jacobs vs. Spofford*, 34 *Tex.*, 152; *Bumpass vs. Taggart*, 26 *Ark.*, 398; *Wallace vs. Cravens*, 34 *Ind.*, 534; *Davis vs. Richardson*, 45 *Miss.*, 499; *Moore vs. Moore*, 47 *N. Y.*, 467; *Sporrer vs. Eifler*, 1 *Heiskell, Tenn.*, 633.

The contract was stamped before the institution of this suit, as appears from the record. *Cooke vs. England*, 27 *Md.*, 29.

Only a fraudulent omission of the stamp avoids the instrument or renders it inadmissible in evidence. *Campbell vs. Wilcox*, 10 *Wall.*, 422; *Willey vs. Robinson*, 13 *Allen*, 128. The repeal of the stamp law by the Act of

1872, ch. 315, sec. 36, which took effect October 1st, 1872, before the trial in the present case, prevents the operation of the penal clause. *Norris vs. Crocker,* 13 *How.,* 429; *State of Md. vs. Balt. & Ohio R. R. Co.,* 3 *How.,* 552; *Rex vs. Justices of London,* 3 *Burrow,* 1456.

The writing in question under the circumstances of this case, and as against the defendant, may be regarded as having been in fact stamped, a stamp having been delivered to him for the purpose by the plaintiff, who was allowed to remain under the belief that it had been so applied.

The second exception was to the rejection of certain testimony offered by the defendant, to prove what a deceased witness had said on a former trial, between the same parties, on the same cause of action. This testimony was properly rejected, not only for the reason assigned in this exception, viz., because the witness did not recollect *all* the testimony, but for other reasons, not there stated. *Sothoron vs. Weems,* 3 *G. & J.,* 435; *Gardiner vs. Hardey,* 12 *G. & J.,* 380; *Parker vs. Sedwick,* 4 *Gill,* 322, and *Ellicott vs. Turner and Peterson,* 4 *Md.,* 485.

As far as possible the jury must have the whole testimony of the dead witness presented to them—the substance of it indeed will do, but it must be the *whole* substance. *Young vs. Dearborn,* 22 *N. H.,* (2 *Fost.,*) 372; *Watson vs. Gilday,* 11 *Serg. and R.,* 342.

The offered evidence is not shown to have any relevancy to the case.

There is nothing in this bill of exception to show, that the issue in this case was the same as in the case referred to by the witness; and therefore the testimony was properly rejected. The witness does say the parties were the same, and the cause of action was the same; but it does not by any means follow that the issue or issues were the same. 1 *Phillips on Evidence, s.* 393, *note* 2;

*Bowie vs. O'Neale*, 5 *H. & J.*, 231; 1 *Phil. on Ev., s. p.* 500, *top* 319; *Gildersleeve vs. Caraway*, 10 *Ala.*, 260; *Watson vs. Gilday*, 11 *Serg. & R.*, 342; *Jackson vs. Lawson*, 15 *Johns.*, 539; *Walker vs. Walker*, 16 *Serg. & R.*, 379, 380; *Melvin vs. Whiting*, 7 *Pick.*, 79.

In the cases of *Heth vs. Young*, 11 *B. Monroe*, 278, and *Chambers vs. Hunt*, 2 *New Jersey*, 522, it was decided, that the record of the former case, must be produced, to show the issue the same. 1 *Phil. on Ev., s. p.* 392, *note*.

It was essential to prove that Heckart, the deceased witness, was *sworn* at the former trial. This fact must always be shown affirmatively. 1 *Tayl. on Evid., sec.* 434; *Garrott vs. Johnson*, 11 *G. & J.*, 178; *Bowie vs. O'Neale*, 5 *H. & J.*, 230.

The third exception is to the refusal of the Court to grant the defendant's first, second and third prayers; and to the granting of his third with a modification.

We think what we have said on the first exception is a sufficient answer to the exception to the refusal to grant the first prayer of the defendant.

As to the second prayer, viz. that the contract is void for want of a stamp, we contend (in addition to what we have already said) that, to make an agreement void for want of a stamp, the fraudulent intent must be affirmatively proven, before either the fine, or the invalidity of the instrument attaches; and the omission of the stamp is not even presumptive evidence of such intent. *Hitchcock vs. Sawyer*, 39 *Vermont*, 412; *Harper vs. Clark*, 17 *Ohio*, 190; *Dudley vs. Wells*, 55 *Maine*, 145; *Morris vs. McMorris*, 44 *Miss.*, 441; *Hallock vs. Jandin*, 34 *Cal.*, 167.

And as to the refusal of the defendant's third prayer, and its modification, we think it sufficiently appears, that after the Court had granted the plaintiffs' third prayer,— to which there is no exception, the third prayer of the

defendant without the modification would have tended to mislead the jury.

The motion in arrest of judgment was properly overruled. The contract between the parties being that the plaintiffs should build a house of a certain description upon the defendant's land, and that the defendant, upon the completion thereof, would pay a certain sum of money therefor, a promise on the defendant's part to allow the plaintiffs to build was necessarily implied, for the breach of which, upon the defendant's preventing the building the house, the plaintiffs could sue. It would be an absurdity if the law were otherwise. *Emmens vs. Elderton*, 13 *C. B.*, 495, (76 *Eng. C. L.*,) in the House of Lords, and *Elderton vs. Emmens*, 6 *C. B.*, 160, (60 *Eng. C. L.*)

It is objected, on behalf of the appellant, that the declaration is faulty in not averring in terms the non-payment by the defendant of the stipulated price of the completed house. But an express allegation to that effect was unnecessary when it appears that that had not been done, upon the doing of which alone the stipulated price was payable.

In a case of this nature, where performance has been prevented by the act of the defendant, the better mode of pleading is, not to set forth the implied promise to suffer the plaintiff to perform, (although that course may be taken as it was in *Elderton vs. Emmens*, giving rise to the principal difficulty in the case,) but as was done in the present case to state the *contract*, and, leaving the implied obligation to be inferred from it, to charge the breach by the prevention. See the judgments of Crompton, J., in the House of Lords, *Emmens vs. Elderton*, 13 *C. B.*, 505; Martin, B. *Ib.*, 511; Erle, J., *Ib.*, 518; Platt, B., *Ib.*, 521; Parke, B., 533.

The cases of *Aspdin vs. Austin*, and *Dunn vs. Sayles*, 5 *Q. B.*, 671 and 685, relied upon on the other side, have no application to the present question. And there is the

Black *vs.* Woodrow and Richardson.

highest authority for holding that those cases must be considered as decided upon the construction of the particular covenants and peculiar circumstances appearing upon the deeds there in question, and that, if the principles of them is supposed to have a more general operation, they must now be regarded as overruled. *Emmens vs. Elderton*, 13 *C. B.*, 510, 519, 533.

Even if the defendant had, before the suit, paid the $6000, such payment would not necessarily have taken away the right of action of the plaintiffs for the actual breach of contract. It could only have affected the question of *damages*, which cannot be considered under the motion in arrest. *Emmens vs. Elderton*, 13 *C. B.*, 535, *per* PARKE, B., *and per* Lord MURE, 541, 542.

If either count is good, it is sufficient. 1 *Code, Art.* 75, sec. 8; *Terry vs. Bright,* 4 *Md.*, 430; *Balt. City Pass. Railway Co. vs. Wilkinson*, 30 *Md.*, 224; *Clark vs. Marsiglia*, 1 *Denio*, 317; *Addison Cont.*, 22; *Regina vs. Welch*, 2 *El. & Bl.*, 357, (75 *Eng. C. L.*); *Dugan vs. Anderson*, 36 *Md.*, 567; *Pilkington vs. Scott*, 15 *M. & W.*, 657; *Whittle vs. Frankland*, 2 *B. & Sm.*, 49. (110 *Eng. C. L.*); *Thomas vs. Roosa*, 7 *Johns.*, 461.

There is nothing in the objection that the verdict is in excess of the damages claimed in the bill of particulars. *Evans' Practice*, (256, 257, 259.) When the common counts were stricken out, the bill of particulars went with them; if the common counts had not been stricken out, and the bill of particulars were properly in the record, the damages claimed in the special counts, viz, $6000, would have justified the verdict and judgment.

As to the objection that the declaration shows no tender or offer, or sufficient excuse for non-performance: both counts state that the plaintiffs were ready and willing to comply with their contract, and were going on to do so, and were prevented from doing so by the defendant. This is all that is necessary, at least after verdict.

1 *Stephens' N. P.*, 380; 2 *Wms. Saund.*, 352, *note* 3; *Regan vs. Gaither*, 11 *Gill & Johns.*, 487; *Charlotte Hall School vs. Greenwell*, 4 *Gill & Johns.*, 418; 1 *Chitty on P.*, 331, 332; 1 *Wms. Saund.*, 220, *et seq., notes to Stennel vs. Hogg* ; 2 *Wms. Saund.*, 352, *note* 3.

ALVEY, J., delivered the opinion of the Court.

In this case, Woodrow and Richardson sued Black on a contract for the building of a house by the former for the latter. The declaration, as originally filed, contained six counts; the first four being common counts, for work and labor, for materials provided, for money paid, laid out and expended, and for goods bargained and sold; and the two remaining counts being framed on the special agreement. By the first of these special counts, it is alleged that the appellees, the plaintiffs below, agreed with the appellant to build him a house on his farm, for which the latter agreed to pay to the former six thousand dollars; and that, in pursuance of the agreement, appellees commenced to build the house, and expended large sums of money thereon, and that they were ready and willing to comply with their contract, and complete the house in accordance therewith, but that the appellant prohibited and forcibly prevented them from so doing, and compelled them, at great expense, to take away the materials by them provided for the building of such house; and that the appellant refused, and still refuses, to pay the appellees for the work and materials provided, to their damage of six thousand dollars.

By the second special count, being the sixth count in the declaration as originally filed, it is alleged that, the appellees and appellant agreed together that the former would build for the latter a frame house on his farm, in the manner and according to the specifications stated and set forth, and that the appellees, in pursuance of the contract, commenced and progressed in the work of erecting

such house, and expended large amounts of money in providing materials therefor; and although the appellees were then and there ready and willing and anxious to comply with the contract in every particular, and to build the house in every respect in exact accordance with the contract, they were prevented from so doing by the express orders of the appellant, whereby they sustained damage to the amount of six thousand dollars.

The four common counts were stricken out by consent after the jury were sworn; and, to the two special counts, the appellant pleaded that he did not commit the wrong alleged; a plea wholly inappropriate to this action, but, as no objection was taken to it in the Court below, we must, to give it any effect at all, suppose that it was intended to traverse the breaches assigned in the two counts to which it was pleaded.

In the course of the trial in the Court below three bills of exception were taken by the appellant; two of them to rulings upon questions of evidence, and the third to rulings in respect to the prayers offered by the appellant. The verdict being against the appellant, he also moved in arrest of judgment, and assigned as reasons for the motion: 1st, that the amount of the verdict exceeded the amount claimed by the bill of particulars; 2ndly, that the declaration failed to allege a tender or offer of performance, or a sufficient excuse for non-performance, of the contract by the appellees; and, 3rdly, that the declaration was in other respects defective and insufficient.

This motion in arrest, going as it does to the right of the appellees to maintain the action on the present declaration, will be first considered.

And first, as to the amount of the verdict being in excess of the amount claimed by the particulars of demand. It is clear, we think, that the motion in arrest cannot be sustained on this ground. The bill of particulars makes no reference to any particular count in

the declaration; and it was filed when the declaration embraced the common counts which were afterwards stricken out. It does not appear to have been the intention of either the appellant in demanding the bill of particulars, or the appellees in filing it, to make it extend to any count in the declaration to which it was not reasonably and properly applicable. As a general rule, a bill of particulars, unless restricted to some particular count, applies to all the counts of a declaration, if they be of a character to require such aid, in order to notify the defendant of the nature and extent of the plaintiff's claim. Such were the cases of *Carter vs. Tuck,* 3 *Gill,* 250, and *Scott vs. Leary,* 34 *Md.,* 389. In both those cases the declaration contained only the common counts in *assumpsit* and where the particulars were properly demandable with reference to them all. But it is only "where the pleading *is so general* as not to give sufficient notice to the opposite party of the evidence to be offered in support of it," that a bill of particulars can be required. *Code, Art.* 75, *sec.* 22, *sub-sec.* 107. This criterion prescribed by the Code is but the expression of the previous rule of practice. In cases where the declaration is special, and disclosed the nature and extent of the demand, as in cases of counts upon promissory notes, or bills of exchange, there is no right in the defendant to require greater particularity than the count affords. In this case, the bill of particulars was proper in reference to the common counts, and, perhaps, to the fifth count, as that count goes only for the work and labor, and materials furnished under the contract. But as to the sixth count, the particulars were unnecessary, and were not demandable, as the count itself was special, setting out fully the contract, and alleging as a breach the appellant's prevention of performance of the contract by the appellees, and the consequent damage sustained by them. The count, therefore, furnished sufficient notice of the

nature and character of the claim, and of the evidence required to support it. This is all that a defendant has a right to demand, in regard to the certainty of the plaintiff's claim.

Wherever, says Mr. Tidd, (*Pr.* 597,) the particulars of the demand are disclosed in the declaration, as in *special assumpsit, covenant or debt on articles of agreement, &c.,* or in actions on matters of record, an order to furnish particulars is unnecessary. And it has been expressly decided that the Court will not compel a plaintiff suing for the breach of an agreement, and assigning by way of special damage, that he has incurred certain expenses, to furnish particulars of such special damage. *Retallick vs. Hawkes,* 1 *M. & W.,* 573. See also *Fisher vs. Wainwright,* 1 *M. & W.,* 480 ; *Stannard vs. Ullithorne,* 3 *Bing. N. C.,* 326, and *Day vs. Davies,* 5 *C. & P.,* 340. And Mr. Evans, in his *Maryland Practice,* p. 256, states the rule to be, that "where the declaration sufficiently discloses the particulars intended to be relied on, a bill of particulars is not necessary or allowed. And if a bill of particulars be actually given, it will produce no effect ; but the party may still prove anything which he might have proved, had there been no bill of particulars."

It follows, therefore, as the sixth count was of a character not to require the aid of a bill of particulars, and the bill of particulars furnished not professing to apply to it, the appellees' right to recover under this count, was in no manner restricted by such particulars, and consequently, the first ground for the motion in arrest fails, even if such question could, in any case, be properly raised on such motion ; a technical question that we do not now decide.

2. Then, as to the second and third grounds for the motion, namely, that there is no sufficient allegation of tender or offer of performance, or of excuse for non-performance of the contract, by the appellees, and that the declaration is in other respects insufficient.

By the fifth count in the declaration, it is alleged, as we have seen, that the appellees were ready and willing to comply with the contract, and to complete the house, but that the appellant prohibited and forcibly prevented them from so doing, and compelled them to desist from the work; and, by the sixth count, it is alleged that the appellees were then and there ready, and willing, and anxious to comply with the contract in every particular, but that they were prevented from so doing by the appellant.

Now, it is certainly clear, that the appellant by preventing the appellees from performing their part of the contract, committed a breach of it, for which he is liable. It is said however, that the contract is silent as to any promise by the appellant to suffer or allow the house to be built; and that his only express promise, was to pay the price agreed on, part while the house was in course of erection, and the balance after its completion according to contract; and, that as the appellant could elect to have the house built or not, as he thought proper, and having elected not to have it built, the condition alone upon which the appellees could sue upon the contract as subsisting has never been performed by them, namely, the erection of the house according to the contract, and, consequently, there has been no such breach assigned as entitles them to recover on the contract, whatever might be their right to recover in general *indebitatus assumpsit*, as for work and labor done and materials furnished. That the only breach for which the appellant can be liable on the contract itself, as he contends, is the nonpayment of the agreed price for the building of the house, and as the house has not been built, the declaration shows no such breach of the contract on the part of the appellant as will render him liable to the appellees in this action.

With respect to the proposition that the appellant was not bound to have the house built, it is certainly true,

that the appellees could not persist in building the house against the consent of the appellant, and in defiance of his express order to desist; but with respect to the other proposition, that there was no promise of the appellant to allow it to be built according to the contract, and that consequently, his prevention constituted no breach, that cannot for a moment be conceded.

It not unfrequently occurs, that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. Thus, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied. *Churchward vs. The Queen*, 6 *B. & S.*, 807. And among the instances given of such implied obligation, is the case where A. covenants or contracts with B. to buy an estate of the latter, at a given price, there, although the contract may be silent as to any obligation on the part of B. to sell, the law implies a corresponding covenant or contract by him to sell and convey the estate. *Pordage vs. Cole*, 1 *Wms. Saund.*, 319. Indeed, no better instance of the proper application of the principle could be furnished than the present case. The appellees agreed with the appellant to build for the latter a house on his land for a certain price, part to be paid while the house was in course of erection, but the larger part of the price was not to be paid until the house was completed; and although the appellant could not be compelled to have the house built against his consent, yet, notwithstanding

the contract is silent as to the appellant's promise that he would suffer the house to be built, the agreement with the appellees for the building of the house clearly implies that he would allow that to be done, without which it would be impossible for the appellees to do what they had agreed to do.

To allow or suffer the house to be built was the corresponding or correlative obligation of the appellant, implied by law, to the obligation of the appellees to build the house, as expressed by the contract; and for any breach of this implied promise or obligation by the appellant, he is equally liable as upon an express promise. The only question is, whether a sufficient breach of this implied obligation has been properly assigned in the declaration before us.

In the case of *Cort & Gee vs. The Ambergate, &c. R. Co.*, 17 *Adol & Ell.*, *N. S.*, 127, where there was a contract for the manufacture and supply of a certain quantity of railway chairs by the plaintiffs for the defendants, to be paid for after delivery, and the defendants, having accepted and paid for a portion of the chairs, gave notice to the plaintiffs not to manufacture any more, as they, the defendants, had no occasion for them, and would not accept or pay for them; in an action upon the contract, it was held, that, as the plaintiffs were desirous and able to complete the contract, they could, without manufacturing, and tendering the rest of the chairs, maintain an action against the defendants for a breach of the contract. It was also held, that the simple notice by the defendants to the plaintiffs that the latter should not go on to supply the rest of the chairs, entitled the plaintiffs to recover, on a count alleging that they were ready and willing to perform the contract, and that the defendants refused to accept the residue of the chairs, and prevented and discharged the plaintiffs from the further execution of the contract; that such notice by the defendants was a legal

prevention, though there was no other act of obstruction. So in the case of *Derby, et al. vs Johnson, et al.*, 21 *Vt.*, 17. There the plaintiffs and defendants entered into a written contract, by which the former engaged to do all the stone work, masonry and blasting upon a certain piece of railroad, at certain specified prices by the cubic yard. The plaintiffs entered upon the performance of the contract, and while they were so engaged, the defendants gave them direction to quit the work, and to do nothing more under the contract; and the plaintiffs having quit the work as directed, it was held to be no relinquishment of the contract on their part; but that the defendants, in giving the notice and stopping the work were in the exercise of a right that belonged to them, leaving themselves liable, of course, for all consequences resulting from their breach of the contract. The same principle was very fully stated and adopted in the case of *Clark vs. Marsiglia*, 1 *Denio*, 317.

Now, in the case before us, according to the averments of the declaration, the appellees were notified and directed by the appellant to desist from the further prosecution of the work contracted to be done by them, and were thus prevented from performing their part of the contract; and though the appellant had a right thus to stop the work on the building, yet, by so doing, he committed a breach of the contract, and thereby incurred a liability to pay the damages that might result therefrom. And the damages in such case would include compensation for the labor done and materials furnished, and such further sum in damages as might, upon legal principles, be assessed for the breach of the contract. 1 *Denio*, 317; *Phil., Wil. & Balto R. Co. vs. Howard*, 13 *How.*, 307, 344. And although the declaration omits in terms to aver the implied promise on the part of the appellant to allow or suffer the house to be built, but sets out in the sixth count the contract in full, and is not very formal or tech-

nical in stating the breach of such implied promise, still, the fact of prevention is alleged as the breach, and that is sufficient, especially after verdict, which is aided by intendment. 1 *Chit. Plead.*, 337.

Discovering no sufficient defect in the declaration to defeat the verdict in this case, we are of opinion that the motion in arrest of judgment was properly overruled by the Court below.

3. The next question is that presented by the appellant's first exception, and his first and second prayers, embraced in his third exception; and that question is, whether the agreement sued on was void, and therefore inadmissible in evidence, because of the want of a proper United States revenue stamp thereon at the time of its execution?

This question has arisen and been decided by several of the highest State Courts of the Union, and it has also been before the Supreme Court of the United States, though not in the form here presented.

In the several State Courts in which the question has arisen, with one or two exceptions, the decisions have been, upon one ground or another, against holding the instruments void for the want of the stamp. In some of the Courts it has been held that the Act of Congress requiring the stamp, does not apply to the State Courts, but to the United States Courts alone; while in others of high authority it has been held not to be within the constitutional power of Congress to declare a contract between citizens of a State void for the mere omission of a revenue stamp. But in, perhaps, the greater number of cases where the question has arisen, it has been held that instruments, though not duly stamped, are not therefore void, or inadmissible in evidence, if the omission to stamp was without intent to evade the provisions of the Act of Congress; and the same cases hold, that, in the absence of clear affirmative proof, a fraudulent intent to evade

the Act will not be presumed. This, upon the express language of the Act of Congress itself, (Act of 13 July, 1866,) would seem to be but a fair and reasonable construction. It is only declared that the instruments required to be stamped "shall be deemed invalid and of no effect" when the stamp is omitted "with intent to evade the provisions" of the Act—that is, with the intent to defraud the government of the stamp duty. It is therefore, as said by the Supreme Court of the United States, in *Campbell vs. Wilcox,* 10 *Wall.,* 420, a fraudulent and not an accidental omission at which the penalty of the statute is directed. And taking this to be the proper construction of the language of the Act, and without at all deciding that the Act is or is not within the constitutional power of Congress, as applied to the State Courts, or whether it was intended to be so applied, we think the Court below was right in deciding as it did in reference to this question, and allowing the agreement to be used in evidence, inasmuch as there was no evidence whatever of any fraudulent intent on the part of the appellees to evade the provisions of the Stamp Act. The stamp tax, of the class to which that in question belongs, has been repealed or abolished, since the 1st of October, 1872, by the 36th section of the Act of Congress, of June 6, 1872; but the effect of that repeal is unimportant to be considered in this case.

4. The question presented by the appellant's second exception is, whether the Court below was right in not allowing the appellant himself to give evidence of what a deceased witness had proved on a former trial between the same parties, and which involved the same cause of action involved in the present case.

The appellant stated, when sworn as a witness on his own behalf, that he was present at the former trial, and heard the testimony of the deceased witness; and that he could state *substantially* what the deceased witness said as

to the quality and condition of certain lumber, at a certain place, which was proposed to be used in the building, but could not state substantially what the deceased witness said as to the different qualities of pine grown in the States of North Carolina and Georgia, as to which the deceased witness gave evidence. It thus appearing that the appellant did not recollect, and could not state even substantially, all that was testified to by the deceased witness on the former trial, objection was taken by the appellees to the appellant's right to give in evidence such part of the deceased witness' testimony as could be recollected, and the Court sustained the objection, and in so doing, we think it entirely free from error.

There is no doubt of the general rule, that evidence given by a deceased witness on a former trial between the same parties, where the question in issue is the same in both cases, and the right of cross-examination could have been freely exercised by the adverse litigant, may be proved on a subsequent trial by any person having competent knowledge. But such witness, to be competent to testify as to what was said by the deceased witness on the former trial, must be able and profess to state the facts testified to by the deceased witness. It is not required to be in the precise language of the deceased witness, it is true ; but it must be as to the facts proved, and not the mere substance of the evidence as formerly given, according to what the living witness may suppose to be its effect or construction. And not only should the facts deposed to by the deceased witness be stated, but all the facts deposed to by him, as well upon the direct as the cross-examination. The reason of this requirement is plain. For, as has been well said by the late Chief Justice Shaw, one part of the evidence may have been materially qualified, softened or colored by another ; and it would be of no avail to the party against whom the witness is called to state the testimony of the former witness, that he has had the right and opportunity to cross-

examine that former witness, with a view of diminishing the weight or impairing the force of that testimony against him, if the whole and entire result of that cross-examination does not accompany the testimony in chief, *Warren vs. Nichols*, 6 *Metc.*, 261. This general rule, requiring all the evidence of the deceased witness given on the former trial to be stated, may have exceptions in cases where there were several and distinct issues, involving distinct subject-matters, in reference to which the deceased witness testified. But that is not shown to be the case in this instance. On the contrary, from the nature of the evidence of the deceased witness, as described by the appellant, it is manifest that it all had reference to the one question, and that was the quality and relative value of the lumber that was proposed to be, or that should have been used in the erection of the house.

But the offer was simply to prove the *substance* of a particular part of the deceased witness' evidence, and that too by the defendant in the cause, in the face of his own statement that he could not recollect the whole of it. If, however, he had professed to recollect and to be able to give the substance merely of the whole of the evidence, it would not have been admissible under the law as settled in this State. In the case of *Garrott vs. Johnson*, 11 *Gill & John.*, 173, the Court of Appeals, after referring to the rule as it appeared to exist in England, and its relaxation in several of the States of this country, in admitting proof of the substance merely, said that it could, with reason and propriety, be objected, that to admit the *substance*, would be too great a relaxation of the English rule, and open too wide a door for a safe and due administration of justice. They then proceed to say: "In such cases we are not disposed to adopt or give our assent to either rule; but to adopt a principle, which, while it would be sufficiently protective of the rights of juries to draw inferences, and decide upon the effect of testimony,

which seems to be the reason of the rule in England, would not be so lax in its operation, as to admit evidence with too much facility on the one hand, or to reject it with too great rigor on the other. We think that for all the purposes of truth and a safe administration of justice, it may be held, that where it is necessary to prove what a deceased witness swore on a former trial between the same parties, where the issue or matter in controversy was the same, as the one then pending, it is sufficient for the living witness who is called to testify, *to prove facts*, that is to say, that the witness who is dead, in giving in his testimony *deposed to certain facts*. Such a rule would be sufficiently restrictive, to exclude the opinion and construction of the witness on the one hand, and not so rigid as to deprive a party in many instances of the benefit of such testimony on the other." The offer in this case was not to prove facts as such deposed to by the deceased witness, but to state *substantially* the testimony in part of the deceased witness, and this of course as the living witness may have construed it. This was properly disallowed.

5. The only other question presented, is that arising on the appellant's third prayer. But in regard to this, we think there is no difficulty. The construction of the contract, in respect to the particular point of this third prayer of the appellant, had been very properly embodied in the third prayer of the appellees, which had been granted by the Court, and to which the appellant did not except; and the Court below could not have done otherwise than modify the appellant's third prayer as it did, in order to produce consistency, and to avoid misleading the jury. There was, therefore, no error in refusing to grant the prayer as offered, nor in granting it with the modification.

Finding no error we shall affirm the judgment.

*Judgment affirmed.*

(Decided 16th January, 1874.)