AUGUSTUS HALL, Executor of ESTEP HALL vs. WIL-
LIAM SHEPARD BRYAN, Trustee.

*Right of a Trustee to bring a Suit at Law—When the nature
and extent of a Trust cannot be inquired into Collaterally—
What Acknowledgment is sufficient to remove the bar of the
Statute of Limitations.*

M. T. by her last will. devised certain funds to H. W. upon certain
trusts, for certain persons therein named, with power to invest and
re-invest. S. T. H. wife of E. H. was one of the *cestuis que trust*
under said will. H. W. loaned a part of said trust funds to E. H.,
who in consideration thereof made and delivered his two prom-
issory notes to the said H. W., one dated the 5th of March, 1863,
whereby he promised to pay on demand, after date to the order of
H. W. trustee of S. T. H. $1037.50, value received, with interest
from date; the other dated the 31st of October, 1864, whereby he
promised to pay on demand, after date to the order of the said H.
W. trustee of S. T. H. $3490.00 value received, with interest from
date. S. T. H. died intestate and childless, on the 15th May, 1875,
leaving E. H., her husband, surviving her. H. W. died on the 12th
of June, 1875, and E. H. was appointed by the Circuit Court of
Baltimore City trustee in his stead, so far as related to the property
bequeathed to S. T. H., but died in February, 1876, without execut-
ing a trustee's bond. He left a will and thereby appointed the
appellant his executor.

On the 31st of May, 1876, W. S. B. was appointed trustee in the place
of E. H., and gave bond as required. Subsequently W. S. B. being
authorized and directed to institute such proceedings as might be
necessary to recover what was due from the estate of E. H. to the
trust estate of S. T. H., brought suit on the aforesaid notes against
the executor of E. H. The defendant pleaded for his testator that
he never was indebted and. never promised as alleged, the Statute
of Limitations and payment, and the same pleas for himself as
executor. HELD :

1st. That the legal estate in the notes was vested in the plaintiff by
the decree appointing him trustee, and by the subsequent decretal
order he was authorized and required to collect the same.

2nd. That the nature and extent of the trust could not be inquired into collaterally in this case, and the question to whom the fund in controversy might belong, must be decided in the Equity Court, where all persons interested should be made parties.

3rd. That the acknowledgment by the defendant's testator within three years before the bringing of the suit, of the existence of the debt, accompanied with a strongly implied promise that he would secure its payment, was sufficient to remove the bar of the Statute of Limitations.

APPEAL from the Circuit Court for Anne Arundel County.

*Exception.*—At the trial of this cause the plaintiff proved that Estep Hall died in February, 1876, and that letters testamentary were granted upon his estate by the Orphans' Court of Anne Arundel County, to the defendant in the same month. He then offered in evidence a certified copy of the will of Margaret Thornburgh, of which the following clauses only need be inserted:

"Item, I give and bequeath unto my nephew, Henry Webster, his executors, administrators and assigns, the sum of fifteen thousand dollars, in trust and confidence that he shall pay the income and annual profits thereof, as the same may arise or accrue, to my niece, Margaret A. Webster, for her sole and separate use, for and during her natural life, so that neither the said trust fund, nor the income thereof, nor the proceeds in which the same may be invested and re-invested, shall at any time during her life be subject to the power, control or disposal of any husband whom she may marry, nor in any manner liable for his debts, contracts or engagements, and from and after the death of my said niece, in trust for such person or persons as she, by her last will and testament, (which whether single or married, she is hereby declared competent to make,) may direct and appoint; should my said niece die married, before her husband, the said sum of money or the investments thereof being undisposed of, it

is my will that the income shall be paid to her husband during his natural life, and that after his death, the said sum of money, or the investments thereof, shall become the property of the children of my said niece, should any there be living, and that in the event of my said niece dying without disposing of the said sum of money, or the investments thereof, without children living at the time of her death, living her husband, then after his death, or should she survive him, after her death, the said sum of money, or the investments thereof, shall become the property of the residuary legatees under this my last will and testament; and I hereby give authority to the said trustee to make and change the investment of the said sum of money according to his own discretion, from time to time as. he may deem proper."

"Item. All the rest, residue and remainder of my estate, real and personal, of which I may die seized or possessed, I direct to be equally divided between such of the children of my said sister, Elizabeth Webster, (except my said niece, Margaret A. Webster, who is above provided for,) as may be living at my death, share and share alike,. the child or children of a deceased child to stand in the place of the parent; provided, however, and it is hereby declared to be my will, that so much of my estate as under this residuary clause is given to my nieces, Rebecca. T. Tyson, wife of Philip T. Tyson, Elizabeth T. McPherson, wife of John D. McPherson, and Sarah Hall, wife of Estep Hall, physician, respectively, I give and bequeath unto my said nephew, Henry Webster, in trust and confidence that he shall invest and re-invest the same, and pay over the income thereof to the sole and separate use of my said nieces respectively, in the same manner and under the same trusts and limitations as to principal and income of said distributive shares, (including the power to my said nieces to dispose of their respective shares by last will and testament, notwithstanding their marriage,) as are

specified and recited in the first clause of this will, in relation to the provision made for my said niece, Margaret A. Webster."

It was shown that Henry Webster assumed the trusts in the will. The plaintiff also offered in evidence the record of the proceedings in a cause in the Circuit Court of Baltimore City, in which Robert M. Henderson and others were complainants, and William Webster, executor of Henry Webster, was the defendant, for the purpose of showing his appointment and qualification as trustee of the property bequeathed to Sarah T. Hall, and his authority to bring this suit. The order appointing him trustee in the place of Estep Hall, deceased, was dated the 31st May, 1876. The plaintiff also proved that Sarah T. Hall died intestate and childless, on the 15th of May, 1875, leaving Estep Hall, her husband, surviving her, and that Henry Webster died on the 12th of June, 1875. The plaintiff then offered in evidence the two notes declared on, and proved that the signatures thereto were in the hand-writing of Estep Hall, deceased.

The plaintiff then proved by William Webster, that he was the brother and executor of Henry Webster, and brother of Mrs. Sarah Hall, and of Margaret, the wife of Robert M. Henderson; that about a fortnight after the death of his brother, Henry, Estep Hall came into the office of Henry Webster, where witness then was, and consulted witness as to the propriety of his disposing of some of the assets of his wife's estate, giving as a reason the high price of some of them, &c., and stated that he wished to make a permanent investment of those assets, which, in consequence of the death of his wife, belonged to him, and he asked witness to go with him to the Safe Deposit Company's office, and examine Henry Webster's box, to get possession of some assets which had been placed there by Henry Webster for safe keeping; he also stated that he had received from Henry Webster, shortly

before his death, statements of said assets and of the trust estate, prepared by H. Webster from memory, which he, Dr. Hall, had asked for, by way of calling Henry's attention to the sinking condition of his health, and not from any want of confidence in him, or any want of confidence that everything was not right; the witness also stated that the assets referred to were no part of the trust estate. That on reaching the Safe Deposit Company's office, Dr. Hall stated that the assets he found in the box corresponded with the list referred to; the list made no mention of the notes which witness found in a separate envelope in the box; when witness found them he held them up, and told Dr. Hall that they seemed to be out of date; he answered that he was perfectly aware of the existence of these notes, and when the trust was filled up with a new trustee, he would make them all right—would make them to the satisfaction of the family.

Afterwards, about the 8th of December 1875, we went into the office of the Deposit Company to take out some of the assets belonging to Mrs. Hall, which witness delivered to Dr. Hall, but he delivered to him none of the assets of the trust estate; the assets so delivered came principally from the estates of her grandfather and of her brother Joseph, and none from Margaret Thornburgh's estate; witness then called his attention to these notes, and stated that an effort had been made to fill up the trusts with new trustees, including that for his deceased wife, and that in drawing the decree Mr. Bryan had accidentally used his name as trustee, that finding this so, witness consulted the family, who advised him to let it stand, if he, the Dr., would accept the trust, as our relations had always been kind, and they all had confidence in his integrity. That Dr. Hall then answered, by saying that it was the duty of witness, as surviving son, to protect the interest of his own flesh and blood, and that he could not from motives of delicacy accept the trust, of which he

was the beneficiary, and he proposed that witness should do so.

The witness further stated, that in crossing the street with a bundle of the assets in his hand to go to the brokers' office, he said to Dr. Hall, "Doctor, if, as you wish, I am to be appointed trustee, I would like you to come up to town soon, to have those notes renewed before I accept the trust." Dr. Hall replied, "of course, when you get the new decree, or your name is substituted for mine, and will let me know, I will come up and make them good." He then said, "I would have done so before, because I was perfectly aware of their date, except that I wanted to have a sufficient amount of unincumbered real estate, so as to prevent trouble in case of anything happening to me." That on both occasions Dr. Hall spoke of making an investment in a mortgage on Markoe's land, but the money to be invested in that mortgage was no part of the trust estate mentioned in the said will.

On cross-examination, the witness stated that Dr. Hall never made any intimation to witness on these occasions, that he was not bound to pay these notes, or that he claimed these notes as his own.

The defendant offered no evidence.

The plaintiff thereupon offered the three following prayers:

1. If the jury shall find from the evidence, the will of Margaret Thornburgh, and the record from the Circuit Court of Baltimore City, which were offered in evidence, and shall further find that Henry Webster accepted the trust mentioned in said will, and took upon himself the execution of it, and that Estep Hall executed and delivered to said Henry Webster, as trustee for Sarah Hall, mentioned in said will, the two promissory notes which were offered in evidence, and that Henry Webster died in June eighteen hundred and seventy five, and Estep Hall died in February eighteen hundred and seventy-six, and that Augustus

Hall is the executor of Estep Hall, and that the witness, William Webster, in a conversation with Estep Hall, about two weeks after the death of Henry Webster, called his attention to the said notes, (by showing them to him,) and stated that they were out of date, and that Estep Hall then said he was perfectly aware of the existence of the notes, and when the trust was filled up, he would make them all right—would make them to the satisfaction of the family; and that afterwards, in another conversation in the month of December, eighteen hundred and seventy-five, with Estep Hall, the said William Webster called the attention of Estep Hall to the fact that he, Hall, had been appointed trustee, when Hall said it was the duty of witness to be trustee, and said witness said to Estep Hall, if, as you wish, I shall be appointed trustee, I wish you to come up and have those notes renewed before I accept the trust, referring to the notes above mentioned: to which said Estep Hall replied, "of course, when you get the new decree, or your name substituted for mine, I will come up and make them good; I would have done so before, because I was perfectly aware of their date, but I wanted to have a sufficient amount of real estate unincumbered to prevent trouble, in case of anything happening to me;" upon the finding of these facts, the plaintiff is entitled to recover.

2. If the jury find the conversations between Dr. Estep Hall and the witness, Webster, as stated by him on the stand, then the declarations and admissions made by said Hall, if believed by the jury to have been made at the times mentioned by the witness, are sufficient to remove the bar of the Statute of Limitations relied on in this case.

3. If the jury find the first conversation between Dr. E. Hall and the witness, as stated by him, then the declarations and admissions made by said Hall in that conversation, if believed by the jury to have occurred at

the time mentioned by the witness, are sufficient to remove the bar of the Statute of Limitations pleaded in this cause.

And the defendant offered the three following prayers:

1. That according to the proper construction of the will of Margaret Thornburgh offered in evidence, the personal property thereby bequeathed to Mrs. Sarah Hall, as one of the residuary legatees, belonged absolutely to the said Sarah, so that upon her death, without a will and childless, the same vested absolutely in her surviving husband, Estep Hall; and if the jury shall find that the two notes offered in evidence, were executed by the said Estep upon no other consideration except the delivery to the said Sarah, or to the said Estep, in behalf of his said wife, of the whole or of part of her share in the said residuary estate, then the said notes were given without a legal consideration to support them, and the plaintiff is not entitled to recover in this action.

2. That even if the personal property, bequeathed to Mrs. Sarah Hall, as one of the residuary legatees under the will, was not given to her absolutely, so that upon the death of Mrs. Hall, intestate and childless, and of her husband afterwards, the same, in the modes pointed out in the first item of the will, became the property of the residuary legatees of the testatrix, still the plaintiff in this case, as trustee of trust estate of Sarah Hall, has no title to maintain this action, and the verdict should be for the defendant.

3. That the declarations of Estep Hall, in the conversations between him and William Webster, as testified to by the said Webster, are not, nor is either of them, sufficient to remove the bar of the Statute of Limitations pleaded in this action.

The Court (MILLER and HAYDEN, J.,) granted the prayers of the plaintiff, and refused those of the defendant; to which ruling the defendant excepted. The verdict

and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL,. C. J., BOWIE, BRENT and ALVEY, J.

*J. Wirt Randall* and *A. B. Hagner*, for the appellant.

If the residuary clause of Margaret Thornburgh's will had made no reference to the first clause, then upon the death of Mrs. Hall, intestate and childless, the estate of which she, as *cestui que trust*, would have died seized, would certainly have devolved upon her surviving husband.

But the residuary clause does refer to the first clause, and the question is, how much of the first clause is thereby engrafted into the residuary clause?

By the latter, the testatrix directs the residue to be divided equally between certain of her nephews and nieces, who may be living at her death; and further declares, that so much of her estate, as under this residuary clause, is given to * * * Sarah Hall, wife, &c., * * she gives and bequeaths to Henry Webster—not upon *all* the trusts designated in the first clause, but merely adopting so much thereof as applies, 1st, to the investment of the money; 2nd, to the payment of the income *to the nieces;* and 3rd, to the power to the nieces to make wills as *femmes sole*.

The residuary clause does not constitute Henry Webster the trustee for the legatees of Mrs. Hall; nor the trustee to pay the income to the surviving husband, after Mrs. Hall's death; nor does it bequeath the property, after Mrs. Hall's ·death, without children, and after the death of her surviving husband, to the other residuary legatees; all which provisions are specially set forth in the first clause.

And it is insisted, that the trusts of the first clause, which are engrafted by reference into the residuary clause,

cannot operate to prevent Mrs. Hall's share of the residue from devolving upon her surviving husband, under the circumstances of the case.    For if the property thus "given" to Mrs. Hall by the residuary clause was subjected to no other restraint, except that a trustee was to receive and pay over the income to her, and was to have the power to change the investment at his discretion, it became emancipated from the trust upon her death, and the property, or the notes which are supposed to represent it, thereupon devolved upon her surviving husband.   *Denton vs. Denton,* 17 *Md.,* 403;   *Rice vs. Burnett,* 1 *Spear's Eq.,* 579;   *Harley vs. Platts,* 6 *Rich. Law,* 315;   *Art.* 45, *secs.* 1, 2 *of the Code.*

Supposing that *all* the provisions in the first clause were engrafted into the residuary clause, then it must be conceded that upon the death of Mrs. Hall, intestate and childless, and after the death of her husband, her share was "*to become the property of the residuary legatees* under this my last will and testament."

It cannot be pretended that any *trust* was to apply to the property then left by Mrs. Hall; William Webster, for instance, as one of the children of Elizabeth Webster, the sister of testatrix, became instantly entitled to his aliquot part of what had previously been Sarah Hall's trust estate; but he would hold it *in his own right* and not through any trustee.   It may be, that the shares of Mrs. Tyson and Mrs. McPherson, in Mrs. Hall's estate, would pass into the charge of their respective trustees already existing under the provisions of the residuary clause. But *Mrs. Sarah Hall's trust estate* under this will, ceased to exist *as such,* after the death of herself and Estep Hall, in any view of the case.   If Estep Hall's estate held any part of what. had constituted that trust estate, and its representative refused to pay William Webster his aliquot part of that estate, which had "become his property" by force of the first clause, William Webster, himself, should

sue. And in the same way Mrs. Tyson's trustee must sue for her aliquot part. But there no longer exists such a thing as "Sarah Hall's trust estate," so far as this will is concerned, and to claim the right to recover *this money,* because the Circuit Court of Baltimore City has authorized suit to be brought to recover what belongs to Sarah Hall's trust estate, is to argue in a circle, and assume the very question in dispute, whether this money now belongs to that estate? *Selby vs. Willis,* 4 *H. & J.,* 242; *Hart vs. Knott, Cowp.,* 46; 1 *Md. Digest,* 876, *secs.* 5 *and* 6.

Neither of the supposed admissions, nor both together, constitute such an acknowledgment or promise, as is sufficient to remove the flat bar of the Statute of Limitations. The first supposed admission was Estep Hall's statement to William Webster, "that he was perfectly aware of the existence of these notes, and when the trust was filled up with a new trustee, he would *make them all right; would make them to the satisfaction of the family."*

The second supposed admission, is said to have occurred about the 8th of December, 1875, after the decree had passed, as the witness states, appointing Estep Hall trustee. Mr. Webster says, that Dr. Hall, when informed that he himself had been appointed trustee of Sarah Hall's estate, suggested that he, Mr. Webster, should act as such; and that he thereupon said to Dr. Hall, "Doctor, if, as you wish, I am to be appointed trustee, I would like you to come up to town soon to have those notes renewed, before I accept the trust." To which Dr. Hall replied: "Of course, when you get the new decree, or your name is substituted for mine, and will let me know, I will come up and make them good;" "I would have done so before, because I was perfectly aware of their date, except that I wanted to have a sufficient amount of unincumbered real estate, so as to prevent trouble in case of anything happening to me."

We respectfully insist, that these declarations do not gratify the requirements of the law upon the subject of new promises.

Dr. Hall would have "made the notes all right, and to the satisfaction of the family," if he could have satisfied them that the share of Mrs. Hall in the residue, had devolved upon him, as her surviving husband. His statement was quite consistent with the idea that he did not believe that he was responsible for a cent of the amount; whatever *promise* may be deduced from what he was saying, was a *promise to himself*, as he was himself the trustee. He understood himself what his statement was designed to imply, and so ambiguous a remark, to say the least of it, should not have been taken by the Court as "an acknowledgment of an existing debt, from which a promise to pay must be implied." *Veasey vs. Bassett*, 7 *H. & J.*, 461; *Oliver vs. Gray*, 1 *H. & G.*, 204; *Mitchell vs. Sellman*, 5 *Md.*. 376; *Stockett, Admr. of Locke, vs Sasscer*, 8 *Md.*, 374; *Dawson vs. King*, 20 *Md.*, 442; *Angell on Limitations, secs.* 212, 221; 1 *Taylor on Evidence, sec.* 675; 2 *Taylor on Evidence, sec.* 987; *Sprogle vs. Allen*, 38 *Md.*, 336; *Beltzhoover vs. Yewell*, 11 *G. & J.*, 216; *Goldsmith vs. Kilbourne*, 46 *Md.*, 293; *Stewart vs. Higdon*, 17 *Md.*, 105; *Bell vs. Morrison, et al.*, 1 *Peters. (S. C.,)* 351.

*William Shepard Bryan*, and *William H. Tuck*, for the appellee.

First. If Henry Webster had been alive, he could have sued on the notes offered in evidence. The appellee was duly appointed by a Court of competent jurisdiction to succeed Mr. Webster in the trust, with the same powers and duties, and was specially authorized and directed to bring this suit.

Second. The appellant's testator, Estep Hall, was one of the parties complainant in the suit, in which the Court was prayed to appoint a trustee to succeed Henry

Webster. The Court appointed Estep Hall as trustee, to succeed the deceased " so far as it related to the property bequeathed to Sarah Hall, wife of Estep Hall;" and the appellee was subsequently appointed after the death of said Estep. This was a judicial determination by the Court that the trust was subsisting, and that it was proper that it should be executed by a new trustee. Both these questions were within its jurisdiction, and may, therefore, be considered as settled, and not open to controversy in this suit. *Cockey vs. Cole,* 28 *Md.,* 276; 2 *Story's Equity Juris.,* secs. 1058, 1061; *Shriver's Lessee vs. Lynn, et al.,* 2 *Howard,* (*S. C.,*) 43, 58.

If it were proper to argue the question in this case, it would be easy to show from the first and last items of the will that it was necessary and proper to have a new trustee.

Third. An acknowledgment to take a case out of the Statute of Limitations need not be made to the plaintiff, but may be made to any one. A recognition of the existence of the debt is sufficient. *Oliver vs. Gray,* 1 *Har. & Gill,* 204; *Knight vs. House,* 29 *Md.,* 195, 200; *Carter vs. Cross,* 7 *Gill,* 43.

The plaintiff's three prayers must be taken together. On the question of Limitations they say, in substance, that Dr. Hall's conversations with William Webster show an acknowledgment that the debt was still in existence. These conversations are not capable of any other meaning.

Fourth. The defendant's first and second prayers were properly rejected, for reasons stated under the second point. If the construction of the will were a question in this case, we would insist that the property bequeathed to Mrs. Sarah Hall was to be held in trust after her death, for the benefit of the various persons designated by the first and last clauses of the will. But the question is no longer open, being concluded by the decisions of a Court of competent jurisdiction.

A fatal objection to the defendant's first prayer is that it asks the jury to find "that the notes were executed upon no other consideration except the delivery to the *said Sarah*, or to the said Estep, *in behalf of his wife*, of the whole or part of her share in the said residuary estate," when there was no evidence whatever of any delivery to "*said Sarah*," or to any one in *her behalf.*

Fifth. The defendant's third prayer was properly rejected, for the reasons given under the third point.

Bowie, J., delivered the opinion of the Court.

The appellee sued the appellant in an action on the case, in the Circuit Court for Anne Arundel County.

The plaintiff in the first and second counts of his *narr.* declares specially to the effect following, viz: that one Margaret Thornburgh in her life time, made her last will, and thereby devised certain funds to one Henry Webster, upon certain trusts, for certain persons therein named, with power to invest and re-invest the same; that the said Webster loaned to the appellant's testator large sums of money, (a part of said trust funds,) in consideration of the first of which loans, Estep Hall the appellant's testator, made and delivered to the said Webster his promissory note dated the 5th of March, 1863, whereby he promised to pay to the order of the payee, as trustee of Sarah T. Hall, on demand after date, one thousand and thirty-seven dollars and fifty cents, with interest from date, for value received; and afterwards in consideration of another loan, from said Webster to said Hall, the said Hall by his certain other promissory note, dated October 31st, 1864, promised to pay to the order of the said Henry Webster, as trustee of Sarah T. Hall, on demand after date, thirty-four hundred and ninety dollars, with interest from date, for value received.

It is further averred that Henry Webster departed this life, and that the said Estep Hall, after the death of the

said Henry Webster, also departed this life having made his last will and testament, whereby he appointed the appellant his executor; that afterwards the Circuit Court of Baltimore City, in a case therein pending, by its decree appointed the appellee trustee, in the place of said Henry Webster, deceased, and by its order authorized and directed the appellee to collect the said notes. That the said notes were due and unpaid.

To these special counts were added, the common counts for money loaned, etc., and account stated by the defendant's testator in his life-time, and other counts against the defendant as executor, upon promises made by him.

The defendant pleaded to the counts against his testator; that his testator never was indebted as alleged, and never promised as alleged, and the Statute of Limitations; and the same pleas to the counts against himself, as executor.

No exception has been taken to the pleadings or admissibility of the evidence, but the points raised by the prayers of the appellant and appellee, are the right of the plaintiff as trustee to recover, assuming the facts alleged in the bill of exceptions to be true, and the sufficiency of the admissions, or conversations of the defendant's testator, to remove the bar of the Statute of Limitations, pleaded by his executor.

The first question involves the incidental one, whether the nature and extent of the trust can be inquired into collaterally in this case.

It is insisted by the appellant, that according to the true construction of the will of Margaret Thornburgh, the appellant's testator was entitled to the funds secured by the notes upon the death of his wife intestate, and without children; or if not, that the fund became the property of third persons, "*proprio jure*," without the intervention of a trustee, and the trust was as far as these notes are involved, "*functus officio*."

Hall, Executor *vs.* Bryan, Trustee.

The appellee contends, that Estep Hall, being a party to the case in equity, in which he was appointed trustee, it was a judicial determination by the Court that the trust was still subsisting, so far as related to the property bequeathed to Sarah T. Hall, and that it was proper the trust should be executed, and these questions are not now open in this suit.

The object of the bill, in the case referred to, was the appointment of a trustee or trustees, to hold the property and execute the trusts in behalf of the several *cestuis que use*, named in the will, in the place of Henry Webster who had since died.

The bill alleged that Henry Webster, the trustee named in the will of Margaret Thornburgh, received from her executors, and took into his possession sundry moneys, stocks and bonds of great value for the benefit of the persons named as *cestuis que trust*, and while holding them for their benefit died, etc. And the complainants charged, they were advised it was competent for them to apply to the Court to appoint a trustee, or several trustees, in the stead of the deceased trustee, to hold the said property for their benefit *according to the terms* of the will of Margaret Thornburgh, deceased, wherefore, they prayed a trustee, or trustees, might be appointed for said purposes.

The decree conforming to the prayer of the bill, appointed several persons trustees for the different *cestuis que use*; among others, Estep Hall was appointed trustee in the place of Henry Webster, deceased, under the will of Margaret Thornburgh, so far as related to the property bequeathed to Sarah T. Hall, wife of the said Estep Hall.

Dr. Hall dying, the appellee, by a subsequent decretal order was substituted in his place.

There was no question before the Court involving the interpretation of Margaret Thornburgh's will, and the decree settled nothing further than the appointment of

the trustees for the several beneficiaries, without determining their respective rights.

By virtue of the decree and subsequent decretal order, the appellee is placed in the stead of Henry Webster, and authorized and required to collect the *choses in action* due him as trustee of Sarah T. Hall. The decree operates *pro tanto*, as an evidence of title, by operation of law; the trustee appointed by the Court, succeeding "*virtute officii*," to the *choses in action* made payable to the testamentary trustee of Sarah T. Hall.

If the original parties to the notes were living, Dr. Estep Hall could not resist at law their payment, upon the ground that the fund had become his by survivorship.

All that is necessary to maintain the action at law, is to prove the averments of the *narr.* If they were insufficient, the defendant should have demurred, or, the defendant must set up some matter *aliunde*, by which the debt has been satisfied or extinguished at law.

The matter sought to be established by the defendant's construction of the will of Margaret Thornburgh, does not extinguish the debt or satisfy it, but tends to prove the fund is to enure to the benefit of another beneficiary.

The decision of this question belongs to another tribunal, one in which all the persons who are or may be interested should be made parties.

The notes in the hands of the trustee may yet be subject to claims against Sarah T. Hall, or other charges prior to the rights of the subsequent *cestuis que trust*, named in the will.

The trust in this case was impressed upon the property in question, by the will, the terms of the *choses in action* and the decree appointing the appellee.

In the case of *Hanson and Wife vs. Worthington*, 12 *Md.*, 439, this Court said, they regarded the probate of the will and the taking out of letters testamentary, by Worthington, as a sufficient evidence of the acceptance of the trust created by the will.

In *Smith and Barber, Ex. vs. Darby*, 39 *Md.*, 270, it was held, the acceptance of a note for a sum of money payable to one, to be held by the payee, in trust for another, constituted an irrevocable trust.

The question as to the duration of the estate of the trustees according to the best authorities, can seldom arise where the subject is personal estate, because the whole legal estate is vested in the trustees, without any words of limitation, and will continue in them until divested by legal transfer or assignment. *Hill on Trustees*, 248, (*marg.*)

The accounts of Webster and McPherson, executors of Margaret Thornburgh, and the receipt of Henry Webster, trustee of Sarah T. Hall, showed the personal estate which came to the latter to be invested for the benefit of the *cestui que use*, and the notes of Estep Hall for the money in controversy payable to the order of Henry Webster, trustee of Sarah T. Hall, evidence the continuance of the investment of the fund for the benefit of the *cestui que use*.

The legal estate in these notes devolved on the executor of Henry Webster, subject to the same uses, until it was divested and transfered by the decree to the appellee as his successor.

The Circuit Court of Baltimore City, had full power and authority as a Court of equity to appoint a trustee, or trustees in the place of the deceased trustee.

In the case of *Denton vs. Denton*, 17 *Md.*, 407, this Court recognized the principle before announced in several cases in this State, that a *cestui que trust* has no standing in a Court of law, in "*propria persona,*" citing *Green vs. Johnson*, 3 *G. & J.*, 389, and declared, that although it was undoubtedly true, that when a trust has been created in personalty, and all the purposes of the trust have ceased, or are at an end, the absolute estate is in the person en-

titled to the last use, yet, this must depend on the plain intent and meaning of the instrument creating the trust.

It was further there decided, that if the original trustee were living, and asserting his title to the property in a Court of law, it could hardly be questioned that his right would be supported; and the same principle would apply to a new trustee if one had been appointed in his place.

It is, therefore, unnecessary and premature to decide whether by the true construction of the will, the fund belongs to the estate of Estep Hall, or to the residuary legatees named after him, if it were proper in a Court of law to determine that question.

From the preceding, it is clear that the right of action was vested in the trustee by the operation of the decree, in the case of *Henderson and others vs. William Webster, Ex. of Henry Webster.*

The plaintiff's first prayer, after recapitulating substantially all the evidence offered to maintain the issues on his part, affirms his right to recover generally.

The second and third prayers, affirm the sufficiency of the conversations of Dr. Estep Hall, with the witness Webster, as detailed by him, to remove the bar of the Statute of Limitations.

In the second, all the declarations and admissions made by Hall in his several conversations with the witness Webster, are relied on to remove the bar of the Statute of Limitations.

The third prayer, relies on the first conversation alone, between Dr. E. Hall and the witness, to remove the bar.

It is insisted by the appellant, that neither of the supposed admissions, nor both together, constitute such an acknowledgment or promise, as is sufficient to remove the bar.

This Court has so frequently determined what is sufficient to take a case out of the Statute of Limitations, that it would be superfluous to do more than refer to some of

the more recent decisions, to dispose of this point. In *Knight vs. House,* 29 *Md.,* 194, it is said, "an express promise within three years before bringing of the action, is not necessary to remove the bar of the Statute of Limitations; a recognition of the existence of the debt is sufficient."

Again, in 33 *Md.,* 511, it is declared, "the law is well settled in Maryland, that the acknowledgment by the defendant of a present subsisting debt, or a promise to pay, is sufficient to remove the bar of the Statute." See also, *Sprogle vs. Allen,* 38 *Md.,* 331.

Each of the conversations detailed by the witness, Webster, as occurring between Dr. Hall and himself, was an acknowledgment of a present subsisting debt, accompanied with a strong implied assurance, that he would secure its payment.

It would in our judgment, be a useless consumption of time and space, to endeavor to enforce what seems to us self-evident.

The prayers of the appellant being substantially the converse of the propositions contained in those of the appellee, the affirmance of the latter, is in effect a rejection of the former. For these reasons the judgment below will be affirmed.

*Judgment affirmed.*