Chapman, Adm'r *vs.* Smoot and Wife.

(Decided 24th June, 1886.)

---

ANDREW G. CHAPMAN, Administrator of GERARD W. HUNGERFORD *vs.* ANDREW JACKSON SMOOT, and NANNIE W. SMOOT, his Wife.

### *Witness—Receipt.*

Where one party to a contract dies, the surviving party thereto, in a litigation, growing out of the same, between himself and the administrator of the deceased, cannot testify as to what took place between the deceased and himself in reference to said contract.

Where a receipt in full without date, is written across the face of a note, on which was endorsed a credit, below some erasures, as fol-

Chapman, Adm'r vs. Smoot and Wife.

lows: " Upper credits stricken out, it being error in the amount. April 15, 1863—$1477.24," the natural inference from the fact that the receipt itself was not dated, would be, unless a different occasion could be clearly assigned to it, that it took effect from the date of the latest credit by reason of such credit, or because of some additional payment contemporaneously made, the mention of which was rendered unnecessary by the conclusive evidence of the satisfaction of the note from the receipt itself.

APPEAL from the Circuit Court for Charles County, in Equity.

The Court below (BROOKE and CRANE, J.,) decreed that there was due from the defendant, Andrew Jackson Smoot, to the complainant Andrew G. Chapman, administrator of Gerard W. Hungerford, deceased, on account of the residue of the mortgage debt in the proceedings mentioned, the sum of $504.67, with interest thereon from the 13th day of May, 1880, and that unless the defendants should, on or before the 1st of January, 1885, pay, or bring into Court to be paid, to the complainant, the said sum with interest until paid or brought in (including the sum of money already tendered and paid into Court by the defendants, which was to be taken and considered as a part of the said sum of $504.67, and as a part payment thereof whenever the residue of the said sum; with interest as aforesaid, should have been paid or brought in as aforesaid,) together with the complainant's costs, to be taxed by the clerk, the real estate in the proceedings mentioned, or so much thereof as might be necessary for the purpose, should be sold, &c. From this decree the complainant appealed. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, RITCHIE, and BRYAN, J.

*Andrew G. Chapman, and Daniel R. Magruder, for the appellant.

*Did not participate in the argument, although present.

*John Prentiss Poe,* and *Richard H. Edelen,* for the appellees.

RITCHIE, J., delivered the opinion of the Court.

The appellee, Andrew, delivered to Gerard W. Hungerford his three single bills, one for $4000 and the others for $2000 each, dated January 1, 1860, and payable with interest respectively in one, two and three years after date, being for the deferred payments of the purchase money of a tract of land called "Society Hill," and executed a mortgage of said land to secure said indebtedness. The bill in this case was filed November 18, 1883, by appellant, as administrator of Hungerford, for a sale of the premises by reason of alleged default in the payment of the principal and $1533 of the interest accrued upon the third or last note of $2000 payable January 1, 1863; the bill admitting the other two notes to have been paid to Hungerford in his life-time.

The essential controversy in the case is upon the averment in defendant's answer, that the $4000 note and the $2000 note due January 1, 1862, were settled in full by said Smoot with said Hungerford in April, 1863, and that said Smoot being the *bona fide* holder of two notes of $750 each, drawn by Francis M. Weems to Margaret Hawkins, dated December 10, 1866, payable with interest from January 1, 1867, assigned the same to said Hungerford in part payment of the aforesaid last note of $2000, and they have since been paid, principal and interest, in part to said Hungerford in his life-time and the balance to his administrator, the appellant.

The appellant admits the receipt of the proceeds of the notes of Weems by Hungerford and himself, but questions, in the first place, their assignment to Hungerford as on account of the purchase of the land, and secondly, if on such account, contends that the first $2000 note was not

paid in full until about January, 1867, and that it was then satisfied by a payment of $378 by Weems as part of his indebtedness on his assigned notes.

With the exception of some disputed credits of minor amount concerning services and rails furnished by Smoot, the differing allegations just referred to furnish the data of the respective parties for their calculations of the balance still due on the mortgage claim.

Much conflicting testimony was adduced, and numerous exceptions were taken by appellant, the principal one being to the admissibility of Smoot's testimony, which, except, so far as it referred to transactions between the appellant and himself was well taken, on the obvious ground that the other contracting party was dead.

Without adverting to Smoot's testimony, and avoiding consideration of all other testimony to which there could be any well founded legal objection, we are satisfied that enough remains, notwithstanding the contrariety of evidence, to render it reasonably certain that the contention of the appellee is correct, and that the decree rendered below fairly determines the merits of the case.

That the notes of Weems, which were transferred to Smoot by Mrs. Hawkins in discharge of a mortgage debt due him, were assigned by Smoot to Hungerford in discharge *pro tanto* of the purchase money, and not in an independent transaction, is clearly established by the uncontradicted testimony of Miss Crain.

In response to the interrogatory: "Were you present or not on the occasion of any conversation between the late Mr. Gerard W. Hungerford and the late Mrs. Mary Crain in regard to payments made by Dr. Smoot on the land purchased by him; if yea, state when and where that conversation occurred, and what it was?" she replied: "I was present at such conversation; the conversation occurred in the year 1867, the conversation occurred at the

residence of Mrs. Mary Crain, my mother; Mr. Hungerford was on a visit to my mother, who was his aunt; my mother had boarded for years with Mr. Hungerford, and they were very intimate when he made this visit; mother had heard of the sale by Mrs. Hawkins of her dower to Mr. Weems, and she asked him if it was so, and he said yes; that he had been up to Port Tobacco a few days before that with Dr. Smoot, and Mrs. Hawkins had passed the notes of Mr. Weems to Dr. Smoot, and Dr. Smoot had passed them to him in payment of the farm, Dr. Smoot had purchased from him called 'Society Hill;' mother remarked that she was very much delighted to hear it; and she then said, well you surely have been paid a great deal of money on that farm; and he then remarked, that it was nearly all paid, and that there was very little then to be paid; after the notes had been applied, there would be very little more to be paid on the farm."

On cross-examination, her version of the conversation was in substance the same, locating the time of its occurrence to the best of her recollection as in the early part of the month of January, 1867.

Weems, the maker of the notes referred to in Miss Crain's testimony, testifies that he gave them to Mrs. Hawkins for the purchase of her dower right in certain land; that they were dated in the fall of 1866, bearing interest from January 1st, 1867, and that they were passed by Mrs. Hawkins to Dr. Smoot and by him to Mr. Hungerford; and had been fully discharged by payments by witness to Mr. Hungerford and his administrator.

This testimony corresponds with the statement of facts made by Mr. Hungerford in Miss Crain's account of the conversation between him and her mother, as to the history and disposition of the notes, and thus strongly corroborates her, unless we assume her whole testimony was a flagrant fabrication, for which assumption there is no justification in the proof. In fixing the time of the execution

of the Weems' note, as Weems and Miss Crain do, an important fact is supplied in determining whether those notes went in part to the payment of the first of the $2000 notes ("B") or whether that note was cancelled before the Weems' notes were passed, and they were applied solely to the last $2000 note ("C.") If partly applied to the first of these, it could not have been fully paid prior to January 1st, 1867.

The first of the $2000 notes, due January 1st, 1862, has a credit on its back below some erasures, as follows :

"Upper credits stricken out, it being error in the amount (F. S.) April 15th, 1863,—$1477.24." Written across the face of the note are the following entries:

"Received in full,

" G. W. HUNGERFORD,

April 15th."

Assuming the date "April 15th," under the name of G. W. Hungerford to be of no import, as the proof does not show it to be in Mr. Hungerford's or Mr. Stone's (the author of the initials "F. S.") hand-writing, or whose it is, the natural inference from the receipt not being itself dated would be, unless a different occasion could be clearly assigned to it, that it took effect from the date of the latest credit by reason of such credit, or because of some additional payment cotemporaneously made, the mention of which was rendered unnecessary by the conclusive evidence of the satisfaction of the note from the receipt itself. The special mention of the date of the credit given, marked " F. S." might be fairly attributable to Mr. Stone's purpose of his own acquittance, as the money is shown to have come through his hands. At all events the presumption would seem to be that the receipt in full on the first $2000 note must have been given prior to any payments on the Weems' notes, for it is not reasonable to suppose that a credit of $120 would have been entered on

the last note on January 1st, 1867, if there were at that time a balance still due upon the former, to which, according to the theory of the appellee, as much as $378 was applied ten days afterwards. There is in fact no testimony showing a payment from the Weems' notes on any note but the last.

The testimony of F. Stone, who was intimate with the parties and took part in their transactions, renders it reasonably clear that the receipt in full on the first $2000 note was there entered on April 15th, 1863, and that no funds were applied to that note from the Weems' indebtedness.

This witness, after examining the $4000 note and the first $2000 note, marked "A" and "B," says:

All the entries made on those two notes, except the signatures of Gerard W. Hungerford, were made by me and are in my hand-writing; they were all made to the best of my knowledge and belief on the dates mentioned in the entries; on the $2000 note, ("B") across the face of the note is written "received in full;" the words "received in full" are in my hand-writing; I believe the entry of "received in full" was made at or about the 15th of April, 1863, but I have no other reason for such belief except the entries coupled with this fact. I had a large claim in my hands for collection for Dr. Smoot, about I think $5000 or upwards. I appear by the entries to have applied part of the $5000 to the payment in full of the balance due on the $4000 note, and to have applied the balance of the collection at the same time to the part payment of the $2000; and as the entry on the face of the note of "received in full" is without date in my hand-writing, and as all the other entries in my hand-writing were dated, I believe that the entry on the face of "received in full" was made on the 15th April, 1863. * * * I kept a law office in Port Tobacco at that time, and for a long time before and after all these notes were drawn by

me as the friend of both parties; they never were placed in my hands for collection, but I think it likely they were left in my iron safe up to April, 1867; all the payments on the two notes, I presume were made in my office, as both Hungerford and Smoot generally came in there to settle their matters; I had a Rowlett's Interest Table; and I think I used to calculate the interest by it for them; the entry of April 15th below the signature of Gerard W. Hungerford on the face of the $2000 note, seems to be somewhat blurred, but I should say it was not in my hand-writing, and I do not know whose it is; the credit on the $2000 note was dated on the 15th of April, 1863, and I presume the entry of the credits and the receipts and the receipt in full were one transaction.

In regard to the last $2000 note, he states that the first two entries, of January 1st, 1867, of $120, and January 1st, 1868, of $250, were made by him, and, in response to a question, said it was not his habit to endorse payments on a subsequent note when there were older and prior notes in existence between the same parties growing out of the same transaction.

Being asked explicitly whether any of the money with which the notes for $4000, "A" and $2000, "B," and the first two credits on the last $2000 note, " C, " were paid from money coming from F. W. Weems' note or not, he testifies:

"I never knew or heard of Mr. Weems in any settlement between Hungerford and Smoot at all, until the 10th day of January, 1867; I had in my hands money that I had collected for Mr. Weems; on that day, the 10th of January, 1867, he directed me to pay a certain amount to Mr. Hungerford; I do not remember the exact amount, but the fact and the amount appear from a day-book which I kept. I can furnish if required an extract from that book, showing the amount [afterwards shown to be $378,] so directed by Mr. Weems to be paid by me

to Mr. Hungerford. I paid him at some subsequent time, when, I do not remember. Mr. Hungerford at that time was indebted to me, and it is probable when we had a final settlement that amount was taken into account, but I am not certain of that; I do not know whether that particular money was included in credit on Exhibit ' C ' or not.; but I am sure that that particular money was not applied to the settlement of the $2000 note ('B.')"

As to the exception taken to this testimony by appellant, because of the statement by witness of impressions made on his mind from the entries made by him and the dates and sources of the payments within his personal knowledge, we do not think it material to pass upon, for disregarding anything but the facts he narrates, the effect of these facts, together with the other proof we have recited, and which is not contradicted, is satisfactorily to establish the contention of the appellees that the note "B" was paid in full about April 15th, 1863, and that the application of the Weems' notes was solely to the last $2000 note.

Concurring therefore with the Circuit Judge in adopting the auditor's report, in respect to the notes in question, and also in respect to the other items of the account, as a correct statement of the balance due from appellee on the mortgage claim, the decree will be affirmed.

*Decree affirmed.*

(Decided 24th June, 1886.)