HARRY S. OWINGS, Administrator, *v.*
ROSCOE DAYHOFF.

[No. 22, April Term, 1930.]

404

*Decided June 24th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*James Clark,* with whom was *J. Carroll Bartholow* on the brief, for the appellant.

*Joseph L. Donovan,* with whom was *C. Ferdinand Sybert* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

This is an appeal from a judgment for the plaintiff in an action brought by Roscoe Dayhoff against Henry S. Owings, administrator of John W. Lacy, late of Howard County, deceased, to recover for services rendered and material furnished the defendant's decedent in the repair and operation of automobiles owned by said decedent, and for the hire of automobiles furnished to him by the plaintiff.

John W. Lacy was a physician, who settled in Lisbon, Howard County, some thirty years ago, and lived and practiced his profession there from that time until his death in

January, 1928. He was unmarried and made his home with Vernon Fowler, and occupied a bed room and maintained an office in his residence in that village during that entire period.

When he first came to Lisbon, Dr. Lacy drove a horse and buggy, but, when automobiles came into general use, he turned to them and at various times owned and operated a number of different cars. It may be assumed from the testimony that the usage to which these machines were subjected was rough, and that to keep them in running order more or less expert assistance was essential. The doctor apparently recognized the conventions of the old school of country physicians, and no road was too poor and no weather too bad to keep him from answering the calls of his patients; he appears to have been an indifferent mechanic, never acquired an adequate working knowledge of the care and repair of automobiles, and as a result his cars were often out of repair.

Roscoe Dayhoff, the plaintiff, is a garageman, and from 1919 to 1927 was engaged in that business in Lisbon. His garage was about two hundred and fifty yards from the Fowler home where Doctor Lacy resided, and his contention is that, beginning in 1921, Dr. Lacy from time to time called on him for assistance in operating his, Lacy's, automobile, to furnish an automobile and chauffeur to carry him from place to place in attending patients, or to supply him with gasoline, oil, and automobile parts and accessories. After Dr. Lacy's death in 1928, Dayhoff presented to his administrator a bill for these services and supplies, aggregating $2,659.35, which the administrator refused to pay, and Dayhoff thereupon brought this action. The declaration, filed April 20th, 1929, contains the six common counts, and accompanying it was an account or list of particulars in the following form: "John W. Lacy, Dr. To Roscoe Dayhoff, To services rendered $2,500." On July 6th, 1929, the defendant demanded further particulars of the plaintiff's claim, and, in response to that demand, the plaintiff filed a bill of particulars, which contained a detailed statement of charges for labor and supplies furnished Dr. Lacy in 1927 and January, 1928, aggregating $159.35, and also the following statement:

"For services rendered, hire and use of automobile and gasoline furnished by Roscoe R. Dayhoff to John W. Lacy, deceased, covering period from September 1, 1921, to January, 1928 .........................$2,500.00"

To that bill the defendant excepted on the ground that the statement last quoted was too general, in that it failed to state "how much of the twenty-five hundred dollars ($2,500) therein charged is for 'services rendered,' how much thereof is for 'hire and use of automobile,' or how much thereof is for 'gasoline furnished,' nor does said bill of particulars set forth with the particularity required by law the dates when the several matters and things therein charged were furnished." These exceptions were overruled, and the defendant then pleaded the general issue and limitations. The case was tried on those issues before the court and a jury, and at the conclusion of the trial a verdict returned for the plaintiff for $2,159.35. This appeal is from the judgment on that verdict.

The record contains sixteen exceptions, of which fourteen relate to rulings on questions of evidence, one to the court's rulings on the prayers, and one to its ruling in reference to a statement of counsel to the jury.

The first question submitted by the appeal is whether appellee's bill of particulars was sufficiently specific, and that relates only to the item of $2,500, for it is conceded that so much of the bill as related to the item of $159.35 was sufficient.

Code, art. 75, sec. 28, subsec. 107, provides that: "Either party may use the common law forms or the forms hereinbefore given, at his election; and either party may require a bill of particulars where the pleading is so general as not to give sufficient notice to the opposite party of the evidence to be offered in support of it." That part of the statute is declaratory in character, and announced a rule of procedure long recognized in this state (*Black v. Woodrow*, 39 Md. 212), and it applies wherever a pleading is so general as

not to give the opposite party sufficient notice of the evidence to be offered in support of it. Or, as stated in *Bullen & Leake, Pr. & Pl.* (3rd Ed.), 56: "The object of the particulars of demand is to control the generality of the declaration, to restrict the plaintiff at the trial, and to give the defendant such information as may enable him to frame his defense or pay money into court if necessary. *Kenyon v. Wakes,* 2 M. & W. 767." In *Randall v. Glenn,* 2 Gill, 436, it was said: "The law seems well settled upon authority, that in actions of this class, the defendant may at any time before he has pleaded to the merits, if the declaration do not disclose the particulars of the plaintiff's demand, call on plaintiff to exhibit them." To the same effect was *Carter v. Tuck,* 3 Gill, 250. And in the more recent case of *Cairnes v. Pelton,* 103 Md. 44, this statement appears: "The office and legal effect of a bill of particulars is to inform the opposite party of the precise nature and extent of the claim which the plaintiff intends to rely upon under each and every count of the *narr.,* and to confine his evidence to the claim thus stated. *Carter v. Tuck,* 3 Gill, 250; *Hall v. Sewell,* 9 Gill, 147; *School Commissioners v. Adams,* 47 Md. 356." And to the same effect are *Newbold v. Green,* 122 Md. 652; *Stocksdale v. Jones,* 133 Md. 178; *Mueller v. Michaels,* 101 Md. 188. The bill or list of particulars which must be furnished in response to such a demand is analogous to the account which must be filed with the declaration in cases brought under the several rule day or speedy judgment acts in force in this state, and to those provisions of the attachment statutes which require the attaching creditor to produce the account or other evidence showing the indebtedness of the defendant. *Mueller. v. Michaels, supra.* Therefore cases dealing with the sufficiency of a bill or list of particulars filed in purported compliance with the provisions of some statute or rule of law requiring a claimant to state the particulars of his claim are apposite, whether they be in cases at common law, under speedy judgment acts, or in attachment. Thus dealt with,

it may be admitted that the decisions determining what is required to gratify the exactions of the rule are not wholly consistent. But the evolution of the rule as marked in the decisions of this court indicates a strong and decided tendency to require a substantial compliance with the terms of the rule, as stated in *Cairnes v. Pelton, supra.* In *Cox v. Waters,* 34 Md. 461, it was held that a statement that the defendant was indebted to the plaintiff "To cash loaned him at sundry times on call $7,500," sufficiently stated the particulars of the claim. In *McDonald v. King,* 125 Md. 592, a suit under the Speedy Judgment Act of Baltimore City, it was held that the account was insufficient because it failed to disclose why or how the defendant was liable for the items charged; in *Stewart v. Katz,* 30 Md. 346, an attachment case, it was said, in referring to an account of merchandise sold to the defendant by the plaintiff: "It has also been objected that the account produced showing the indebtedness of Long, is not such as the law requires, because it only shows the amount claimed, and is not sufficiently explicit and certain in its items and details. An examination of it, however, shows that it is wanting in none of these particulars. It is made out in the mode usually adopted by merchants engaged in extensive business, and is perfectly intelligible." In *Mueller v. Michaels,* 101 Md. 188, it was held that the following statement of particulars: "Frank Michaels and John Kirby to Arthur Mueller, For cash money received from the plaintiff in the month of June, 1904, by the defendants in the sum fo $285.00," was insufficient because it failed to show any liability of the defendant to the plaintiff; and in *Stocksdale v. Jones,* 133 Md. 177, it was held that a statement that "the defendants are indebted to the plaintiff for money had and received from the plaintiff's intestate for the use of the plaintiff's intestate, as follows," was not a sufficient statement of the particulars of the plaintiff's claim, because it failed to show what the suit was about or how the money was received. As a result of the statute, of these cases, and other decisions of this court, the

rule has now become firmly established that no statement of the particulars of a claim asserted in any pleading furnished in response to a proper demand will be regarded as sufficient, unless it shows the precise nature and extent of the claim, and affords the opposite party such information as will enable him to frame his defense. Applying that rule to the bill of particulars under consideration, its insufficiency is manifest. The claim includes three separate and distinct items, (1) services, (2) hire and use of automobile, and (3) gasoline, which are all included in a single gross charge. There is nothing in it which offers the slightest information as to the character, extent, or value of the services, of the quantity or price of the gasoline, or of the charges for the "hire and use of automobile." Such a statement was not only too general, but was so confusing as rather to embarass than aid the defendant in framing his defense. The exception to it should have been sustained, and since the failure of the court to take that action compelled the defendant to go to trial without such knowledge of the plaintiff's claim as under the law he was entitled to receive, it cannot be assumed that he was not injured by that ruling.

Of the fourteen exceptions to the rulings of the trial court on the admissibility of evidence, only those which related to the opinions of certain experts as to the value of plaintiff's services were stressed in this court, and while the others were not expressly abandoned, they were trivial in character, and the rulings as to them are certainly free from injurious error.

The plaintiff made no attempt to supply any details or items of his $2,500 claim, but relied entirely upon the testimony of neighbors and patients of Dr. Lacy, and of neighbors, employees, and acquaintances of Dayhoff, who in substance testified that they had seen Dayhoff driving Dr. Lacy at all hours of the day and night, in all kinds of weather, and on good and bad roads; and that they knew that he was often called by Dr. Lacy either to drive his, Lacy's car, to start it,

or to repair it, or to drive him, Lacy, in Dayhoff's automobile. From the testimony it was impossible to say how much of Dayhoff's time was thus occupied, how much gasoline he furnished Dr. Lacy, how much of the time he drove his own, Dayhoff's car, and how much he drove Dr. Lacy's car, how far he drove either, or how much time he spent in repairing or in starting the Lacy car. Such evidence afforded no legal warrant for estimating the value of the plaintiff's claim on a time, quantity, or mileage basis, but the measure of his damages was fair compensation for one having plaintiff's skill and equipment, who held himself ready at all times to place them at Dr. Lacy's service, and which were accepted and used by Dr. Lacy in the maner and to the extent described in the evidence to which we have referred.

With the record in that state, the plaintiff called two witnesses, C. Edward Stem and John S. Barnes, to prove the value of his services. Neither of them appears to have had any direct knowledge of Dayhoff's services, but they were examined as experts. Stem lived at New Windsor, in Carroll County, and had for some ten years been employed to drive automobiles for wages. He knew nothing about the prices prevailing in Lisbon for the hire of automobiles, but testified that at New Windsor, sixteen miles away, the charge for a driver and car ranged from twenty cents to thirty cents per mile, that those prices prevailed all around there, and that he had driven hired cars in the neighborhood of Lisbon. Having stated that he had heard substantially all the testimony in the case, Stem was asked to express an opinion based on that testimony as to what would be "fair compensation for the services rendered, in light of what" he knew like services to be worth. Over objection he was allowed to answer and said: "In my judgment according to the evidence and condition of the roads he has had and with the time of the year he has had to do it in, I would say at the lowest figure $300 or $400 a year. I wouldn't mortgage myself to do it." He was then asked, "I want you to state it in a lump sum?" and replied again over objection, "$2,500." These rulings are the subject of the tenth and eleventh exceptions.

Barnes lived at Winfield, Carroll County, and had been engaged for some twelve years in driving automobiles for others; he had worked in and around Lisbon, and knew of one other person similarly engaged in Sykesville, whose work carried him into Howard County, and was familiar with prices paid "to men covering that territory." He too had heard all the testimony in the case (including the testimony of Stem). He was then asked: "From your knowledge of the pay to men taking people around in automobiles, chauffeurs and so on, and from all the testimony you have heard here today, what would you say would be a fair price for the services rendered by Roscoe Dayhoff to Doctor Lacy from September, 1921, to January, 1928?" An objection to that question was overruled and the witness answered, "$2,500." He then gave the following testimony on cross-examination: "Do you know how many trips he made? A. No, sir. Q. How many trips, you don't know how many trips he made in the day time? A. No, sir. Q. Know how many trips he made in the night time? A. No, sir; only from the evidence. Q. You know how many times they used Doctor Lacy's car? A. No, sir. Q. You know how many, you don't know how many times they used his own car? A. No, sir." And at the conclusion of that examination the defendant moved the court to strike out the witness' testimony, which motion the court overruled. These rulings are the subject of the twelfth and thirteenth exceptions.

The rulings involved in these four exceptions were undoubtedly erroneous. The testimony upon which the so-called expert opinions were based could not possibly furnish any rational or intelligible basis for an expert opinion as to the value of such services as the plaintiff rendered Dr. Lacy, nor was either witness qualified as an expert to say what Dayhoff's services were worth. Stem knew the rates per mile for the hire of an automobile and chauffeur; Barnes knew what chauffeurs were paid, but neither knew how services such as those rendered by Dayhoff were compensated. The only facts which as a result of their past experience were known to them, which may not have been known to the jury,

were the prevailing rates for the hire of automobiles or chauffeurs in the general neighborhood of Lisbon. But in applying that knowledge to determine what the services upon which the plaintiff's claim was based were worth, they had no greater or different qualifications than the jury, and to permit them under such circumstances to give their opinions as to the value of such services in the aggregate was to permit them to decide the very issue which the jury was sworn to try. The prevailing rates for automobile hire in the neighborhood, and the usual rate of compensation paid chauffeurs and automobile mechanics there, were facts to be considered by the jury in connection with the other evidence in the case in estimating the value of plaintiff's services, and it was for them alone to decide what weight should be given them. For the formulation of such an estimate on the evidence in the case required no greater skill or experience than that possessed by the average man engaged in the ordinary every day business of life. *Hardy v. Chesapeake Bank,* 51 Md. 599; *Stumore v. Shaw,* 68 Md. 19; *Balto. & Y. Turnpike Co. v. Leonhardt,* 66 Md. 78. The questions involved in these exceptions were also objectionable because they asked the witness to estimate the plaintiff's damages in a "lump sum." That form of question was denounced in *Western Md. R. Co. v. Jacques,* 129 Md. 403, in which the court said that it had "so many times recently declared testimony of this character to be inadmissible, that it would serve no good purpose to enlarge upon the reasons which led to that conclusion." And much the same thing was said in *Carter v. Md. & Pa. R. Co.,* 112 Md. 613. A further objection was that they did not require the witnesses to assume the truth of the evidence upon which they were predicated.

The plaintiff's first prayer was in part predicated upon the hypothesis that within three years before the suit Dr. Lacy "declared that the plaintiff had done work for him and performed services," and that that statement amounted to an acknowledgment of a present subsisting indebtedness, and was sufficient to support an inference that Dr. Lacy then and there promised to pay the same. The defendant specially excepted

to the prayer on the ground that there was no evidence in the case legally sufficient to show any new promise or acknowledgment made to take effect within three years before the suit, and also in his first and third prayers asked that the jury be instructed that there was no evidence in the case legally sufficient to remove the bar of limitations raised by his fifth plea, and that in no event could the plaintiff recover for services or materials not rendered or supplied within three years before the suit. The special exception was overruled, the plaintiff's first prayer granted, and the defendant's first and third prayers refused. In these rulings there was error. The mere fact that the defendant's decedent had declared that the plaintiff had "worked for him and performed services" was certainly not an acknowledgment of a subsisting debt, but at most a mere narrative of a past occurrence. To say that at some past time a person was in one's employ, or that one owned a certain automobile, or that a contractor had built a house for him, carries no implication that the employee or the contractor or the automobile dealer has not been paid. The plaintiff's prayer was bad for that reason, and also because it excluded payment from the consideration of the jury, and should have been refused.

A somewhat different question was raised by the overruling of defendant's second special exception to plaintiff's prayer, and the refusal of his first and third prayers, which was, whether there was in the case any evidence legally sufficient to entitle the plaintiff to recover for services rendered, or materials furnished, the defendant's decedent, more than three years before the suit. It was not disputed that a part of the plaintiff's claim accrued more than three years before the suit, and unless within that period defendant or his decedent acknowledged the same as a present subsisting indebtedness, or expressly promised to pay therefor, or conditionally promised to pay the debt, and the condition had been performed or gratified, so much of the claim as accrued more than three years before the suit was barred by the statute. *Taylor v. Perryville,* 132 Md. 420. It is not contended that there was any promise express or conditional to pay the

claim, so that the question is whether there was any legally sufficient evidence of an acknowledgment. Such an acknowledgment must have amounted to a clear, distinct, and unqualified admission of a subsisting indebtedness. *Wood on Limitations* (4th Ed.), sec. 68; *Hall v. Bryan,* 50 Md. 194; *Stockett v. Sasscer,* 8 Md. 378; *Sprogle v. Allen,* 38 Md. 338. The only evidence on the point is to be found in the following statements: Mrs. Ross Hooper testified that on one occasion Lacy had said to her, speaking of Dayhoff, "he said how good Roscoe had been to him, he was always there when he called on him, and he said he would be remembered for his kindness." Milton Sanner said that he had talked to the doctor about Roscoe, and "he talked like he thought right much of him." Miles Fairbanks said that on one occasion some one, presumably Dayhoff, tried to sell him a car, and Dr. Lacy, who was present, said "that he often depended on Roscoe for help when he needed help on those things. It didn't seem it was specific." Miss Ada Franklin told of a conversation with Lacy, when he called on Roscoe, who was visiting her, to drive his automobile, in the course of which he said, "Roscoe wouldn't lose anything by it," and that "Roscoe had been very kind to him, and he wouldn't lose anything by it." E. E. Dayhoff, plaintiff's father, said that on one occasion Dr. Lacy had given him a message for Roscoe: "He wanted him to bring his mail up there and be there at 7 o'clock, no matter what he had to do, he would lose nothing." There is nothing in those statements, considered singly or together, which could possibly be construed as an admission of a present subsisting indebtedness, such as was found in the cases, cited by Judge Pattison in his very exhaustive review in *Knight v. Knight,* 155 Md. 248, *et seq.,* of the decisions of this court. At most they amounted to no more than natural expressions of appreciation of the favor of a loyal friend who had helped him when he needed help. Such expressions as that he would "remember" him, or that he would "lose nothing by it," were more consistent with an intention of rewarding Dayhoff by some future favor or gratuity, testamentary or otherwise, than with the admission

of a present indebtedness. And they are, in our opinion, too indefinite to support the inference that they amounted to an admission of a present subsisting indebtedness, and the court should have sustained the special exception to the plaintiff's prayer, and should also have granted the defendant's first and third prayers.

During the course of the case the defendant offered in evidence (1) a paper-writing purporting to be an admission of indebtedness signed by Dayhoff, (2) a check from Lacy to Dayhoff, on which was written the words "Settlement in full to date." In connection with those papers the defendant submitted two prayers, which in effect told the jury that, if they found that Dayhoff had executed the admission of indebtedness and had cashed the check, which was paid in due course, that he could not recover for any materials furnished or services rendered prior to the respective dates of those instruments.

The paper-writing referred to in defendant's sixth prayer is as follows:

"Dec. 3, 1926.
Interest July 25, $2.50.
I owe Dr. J. W. Lacy, eighty-one—35 Dollars on settlement.
$80.35
2.50
————
$82.85          Roscoe Dayhoff."
Marked on back:
"Paid July 24, '27."

That instrument falls directly within the ruling in *Virdin v. Stockbridge,* 74 Md. 481, and there being no evidence in the case affecting its validity or modifying any presumptions arising from its execution, defendant's sixth prayer should have been granted.

Defendant's seventh prayer, which related to the check, was defective in that it failed to require a finding that the words "Settlement in full to date" were on the check when it was negotiated by Dayhoff. Aside from that objection, for

reasons stated above, it was unobjectionable. In *Chapman v. Smoot,* 66 Md. 8, it was held that the words "Received in full," written across the face of a promissory note, constituted a receipt, and there is no apparent reason why similar words written across the face of a check should be given any other or different meaning.

In arguing the case to the jury, counsel for the appellee stated that counsel for the appellant could have called Mr. Dayhoff to the stand. The defendant thereupon moved the court to withdraw a juror and continue the case, and its refusal to grant that motion is the subject of the sixteenth exception (erroneously numbered seventeenth). Dayhoff was, under the statute (article 35, section 3), incompetent to testify as to conversations or transactions had with the deceased. The disqualification was statutory and no presumption arose from the failure of the appellant to waive it, and the remark was improper. But the court fully and carefully warned the jurors not to be affected by the statement, and we find no error in its refusal, under such circumstances, to continue the case.

From what has been said it follows that it will be necessary to reverse the judgment appealed from.

The defendant by his first special exception to the plaintiff's prayer asserted that there was in the case no evidence legally sufficient to entitle the plaintiff to recover on *quantum meruit.* But we find no substantial merit in that contention. There was abundant evidence of services rendered and materials furnished defendant's decedent within three years before the suit, and subsequent to the date of the receipts to which we have referred. The presumption is that, having received the benefit of such services and materials, the decedent undertook to pay what they were reasonably worth. Whether he did pay for them was for the jury to determine upon the evidence. The judgment will therefore be reversed with a new trial.

*Judgment reversed, with costs to appellant, and new trial awarded.*